JUDGE PRYOR
delivered the opinion oe the court.
The appellee, the Louisville Bridge Company, undertook to construct a bridge from the Kentucky to the Indiana shore across the Ohio River at the head of the falls. It was necessary, in order to the successful prosecution of the work, to erect cribs along the line of the bridge about six or eight feet square, to fill the same with rock and sink them to the bottom of the river. The company then constructed a temporary railway upon these cribs, so as to enable its hands to *85 carry the stone and other material necessary to build the bridge. After the railway had been extended some distance into the river two planks, one upon the other, and estimated to be from nine to twelve inches in width, were placed, one end of them on a truck loaded with stone that stood on the railway, and the other end on a covered flatboat that was anchored within a few feet of a crib that was being filled with stone. The distance from the truck on the railway to tlie flatboat was about ten feet. The planks were used so as to pass the stone from the truck on the railway to the crib that was being filled, and the -hands employed for that purpose stood' upon this plank and passed from one to the other the stone until it was thrown into the crib. The water directly beneath the planks on which the workmen stood was distant about five or six feet, and running about fifteen miles an hour. The proof also shows that a skiff was tied at or near the upper end of the flatboat, and nearer the Indiana shore, for the safety of those employed in this hazardous labor.
John Sullivan had been employed by the company for some time, and while standing on the plank and passing (in connection with the other laborers) the rock from the railway to the crib lost his balance by the giving way of a portion of a stone he held in his hand, fell into the river, and was drowned.
The appellant, Julia Sullivan, who is his widow, brings this suit, as the administratrix of her husband, against the appellee, the bridge company, alleging “that her husband while employed and engaged in obeying the orders of the company, and without any fault or carelessness on his part, was precipitated into the river and drowned; that his life was lost by reason of the willful neglect of the company and its agents charged with the superintendence of the work in not making such preparations and using such precautions as were necessary and proper for the safety and security of her husband and other like em *86 ployees engaged in and about said work, under their orders, directions,” etc.
The answer of the appellee puts in issue the allegation of the appellant’s petition, and upon the trial of the cause in the court below a verdict and judgment were rendered for the defendant (the appellee), and from that judgment this appeal is prosecuted.
The evidence in the cause establishes these facts: that John Sullivan, appellant’s intestate, previous to the day on which he was drowned, had with three or four others been engaged in passing stone on the same plank. The foreman also stood upon it and passed the stone. One of the laborers refused to go upon the plank at all, and when Sullivan, together with others, hesitated about going on it, MeKey, who was the foreman of the work, said to Sullivan and others, “ Get on that plank and pass the stone along or go home.” Then Sullivan with others went on it, and shortly after fell into the river. It is also in proof that a skiff was attached to the flatboat in order to insure the safety of those at work, and there is some testimony conducing to show that if this skiff had been fastened at the lower instead of the upper end of the boat, Sullivan might have been reached sooner and his life saved.
On this point, however, the evidence is conflicting, and the weight of testimony is that they were not longer than one minute in unloosing the skiff and getting it under way. One man falling with Sullivan was saved, and every effort made to rescue the latter. This mode of conveying the stone had been practiced by the company for some time, but after this unfortunate accident the platform was widened and made much more secure.
This action was brought under the third section of the act of March 10, 1854, entitled “An act for the redress of injuries arising from the neglect or misconduct of railroad companies and others” (Revised Statutes, 2 Stanton, 510), *87 and reads as follows: “ That if the life of any person is lost or destroyed by the willful neglect of another person or persons, company or companies, corporation or corporations, their agents or servants, then the personal representative of the decedent shall have the right to sue such company, etc., and recover punitive damages for the loss or destruction of the life aforesaid.”
It is conceded that no recovery can be had in the present action by the appellee, as the personal representative of her husband, in the absence of proof showing that he lost his life by reason of the willful neglect of the company or its agents. Counsel for the appellee insists that, conceding all the facts proven to be true and the instructions erroneous, still no cause of action exists.
The essential questions presented by the argument in this case arise upon the instructions given by the court below; and, if erroneous, were they prejudicial to the appellant? The first instruction given at the instance of appellant’s counsel, basing the right of recovery upon the alleged willful negligence of the company, was right and proper, and its CQrrectness is not questioned by counsel for the appellee. Many instructions were given and refused by the court, but we deem it unnecessary in 'determining the legal questions presented to notice any more of them than the third and fourth instructions given at the instance of counsel for the appellee, as follows: “No. 3. That to entitle the plaintiff to recover in this action they must find from th'e evidence not only that the plank or other means used in the prosecution of defendant’s work was defective and insufficient, and by reason thereof plaintiff’s intestate lost his life, without any fault or negligence on his part contributing thereto; but they must also find that such defectiveness or insufficiency was known to defendant or its agents, and notwithstanding that knowledge they willfully neglected to remedy the same.” “No. 4. That if the jury find from the evidence that plaintiff’s *88 intestate, by his own fault, negligence, or want of care, contributed to bring upon himself the injury complained of, plaintiff can not recover in this action, and the jury should find for the defendant.”
A contractor employing laborers in and about his work is liable to his employees for any injury sustained by them in the prosecution of the same, the injury being the result of his negligence or that of his agent. The relation existing between the two requires that the employer shall use ordinary care in the selection of materials to be used by the laborer in the course of his work, and to exercise this same degree of care and caution in the selection of those who are to control and manage his hands. When the employer knows, or with the exercise of ordinary vigilance and care ought to have known, that the materials furnished by him for the use of the laborer in the construction of the work were defective, and the latter by reason of this negligence is injured, he may recover of his employer damages by reason of the injury sustained. (Shear-man and Redfield on Negligence, pp. 104, 105, 106; Saunders on Negligence, p. 120.)
While this doctrine is fully recognized, it is equally as well settled that whei'e the employee undertakes to perform labor that is necessarily attended with danger to himself he so far assumes the risks as to require the exercise of ordinary prudence and caution on his part. He is not bound to engage in work that places his life in peril; and when labor of that sort is voluntarily assumed and an injury occurs, he can not look to his employer for damages upon the ground of negligence, if by the exercise of ordinary vigilance he could have avoided the accident. The law implies that the laborer is to be furnished with proper and safe material for the execution of his work, and makes it obligatory on the employer to provide for his safety while engaged in its prosecution; but when the employee knows all about the material furnished, and being fully aware *89 of' its defective and unsafe condition voluntarily uses it and thereby sustains an injury, he is without remedy.
In an examination of many authorities on this subject we have found no case where the employer, either from his own neglect or that of his agent, was held liable when the party using the material furnished him, and receiving an injury therefrom, knew before the injury was received as much about the material used and its defectiveness as the party furnishing it. In the case of ’Williams against Clouch, referred to by the elementary writers on this subject, the declaration would have been bad without an allegation of the want of knowledge on the part of the plaintiff as to the defect in the ladder; and therefore it was alleged “that the defendant was possessed of a ladder unsafe for use, and, knowing this fact, induced the plaintiff, who was in his employ, to carry corn up the ladder, and by reason of the defect therein, the same being unknown to the plaintiff, he fell and was injured.” It was held that the plaintiff could recover; but we can well see how the action, could have been defeated by proof, upon a proper issue made, that the plaintiff knew of the defect in the ladder as well as the defendant, and with that knowledge assumed the risks.
There are cases where the employee has a right to depend upon the judgment of his employer as to the safety of the material furnished him, and in such instances, where he is injured by the negligence of the party furnishing the material, his right to recover is unquestioned. In the present case the appellant’s intestate had been in the employ of the company for many months; he had been employed for several days in working on the very plank from which he fell into the river; and, as the evidence shows, was aware of the danger, and at one time refused to go upon it. He not only had the means of knowing but did know the danger he was incurring, and voluntarily placed himself in a position where he lost his life, *90 when by the exercise of ordinary care for his own safety he might have avoided it.
The skiff, as appears from the proof, was unloosed as soon as it was possible for the hands to reach it; and whether so or not, the cause of the unfortunate accident was the voluntary position assumed by the intestate on the plank from which he fell. This want of ordinary care and caution on the part of the intestate, and the voluntary risks assumed by him, appears from appellant’s own proof, and no recovery can be had, conceding the truth of all the facts proven in the case. If the facts proven presented a state of case that ought to have gone to the jury, we are not prepared to agree with counsel for the appellee that either of the instructions given at his instance contained the law of the case. It is not every act of contributory negligence that prevents one from maintaining an action for an injury received. Such negligence will not prevent the plaintiff from recovering, unless for this negligence the injury would not have occurred, or if the defendant by the exercise of ordinary care could have avoided the consequences of the plaintiff’s negligence. (Saunders on Negligence, page 58.) The court should have told the jury what contributory negligence was, and not have left it in their power to say that it was either slight or gross negligence. They should have been told that it was the want of ordinary care on the part of the intestate in protecting himself from danger. Under the instruction given the jury might have believed that the company was guilty of willful and reckless negligence, and still release it from liability, because the decedent had been guilty of slight neglect.
The third instruction says in effect that no recovery can be had in the case unless the company or its agent knew of the defective materials used, and willfully neglected to remedy the defect. This instruction, as well as the fourth instruction, is in conflict with the principles of this opinion and the adjudica *91 tions of this court in the cases of the L. & N. Railroad v. Robinson (4 Bush, 509), Same v. Collins (2 Duvall, 116), and Same v. Spence (MS. Opinion). If the defects were such as the company or its agent ought to have known, or by the exercise of ordinary vigilance could have known, the company is responsible. These instructions, however, were not prejudicial to the appellant, as her own testimony fails to show that the death of her husband resulted from the willful negligence of the company or its agents. This character of negligence must be proved in order to make out a cause of action under the statute.
The judgment is affirmed.