# PROVIDENCE COUNTY.

## THOMAS KELLEY *vs.* THE SILVER SPRING BLEACHING AND DYEING COMPANY.

In an action brought by a workman against the coporation which employed him, to recover compensation for injuries which the plaintiff alleged were caused by the neglience of the defendant in not keeping in proper repair certain machinery operated by the plaintiff, in not keeping this machinery properly protected and boxed, and in not keeping the room in which this machinery was placed properly lighted, it appeared that the plaintiff was a man of mature years and ordinary intelligence, and had worked at the machinery in question for four years; that the room was lighted as usual; that he had operated the machinery for weeks in its imperfect state without protest or complaint; and that no statute in Rhode Island required such machinery to be boxed:

*Held*, that the plaintiff could not recover.

*Held*, further, that one voluntarily entering a dangerous service, knowing the danger, himself assumes the risk of his employment.

*Held*, further, that one continuing to work exposed to a known danger, without complaint, without any promise that the danger shall be removed, and not under stress of special exigency, consents to the risk of his employment.

DEFENDANT'S petition for a new trial.

*April* 20, 1878. DURFEE, C. J. This is a petition for the new trial of an action of the case for negligence resulting in the mutilation of the plaintiff's hand. The action was tried to a jury in this court, at the October Term, 1875. The testimony then submitted by the plaintiff was to the following effect, to wit:

The plaintiff was injured January 12, 1874. He then was, and for four years had been, in the employ of the defendant corporation in its dye-house as a gig-tender. A gig is a machine consisting of two rollers, set in a frame, which are made to revolve by gears connected with the main shafting of the dye-house, from which they receive their motion. The instrument by which they are connected is called the shipper or shipping apparatus. The gig is used, in the process of dyeing, to cause a roll of cloth to work down from one of the rollers into a vat of dyeing liquor and there to wallow a while, and then to come up and be rolled on the other roller. There were several gigs in the dye-house. The gig operated by the plaintiff was nearest the corner which contained the driving gears of the main shafting. These gears revolved with an upward motion, so that they would not be likely to injure any person, unless he came in contact with them from below. They revolved behind a boarding or boxing; but, previous to the accident, some four or five inches of the lower part of this boarding or boxing had been broken away so as to expose them. The plaintiff testified that the gears had been so exposed for several weeks, but that he had never complained of the defect or called attention to it; also, for some weeks prior to the accident, the plaintiff's gig had been out of repair. He complained of the defects to the company's agent, but the agent declined to repair them, saying that the company would not furnish the necessary materials. The defects were in the gears of the gig and in the clutches of the shipping apparatus. The gears were defective from loss of teeth, so that when they were in motion there was a constant jar caused by the broken teeth. The clutches of the shipping apparatus were worn, so that the jar of the gigs caused them to slip apart and the gigs to stop, thus impeding the work

and tending to injure the cloth which was dyeing. These defects were aggravated by the unevenness of the floor where the gig stood. The plaintiff, after the company's agent had refused to repair his gig, resorted to a contrivance which was quite commonly used by employees in the dye-house whose gigs troubled them in a similar manner. The contrivance was a rope or string, one end of which was, in the case of the plaintiff, fastened to an iron brace near the boxing of the corner gears, and the other end of which was fashioned into a loop or noose, which, being slipped over the shipper, kept it from displacement, and so insured a more regular operation of the gig. The company's agent probably knew of this use of the rope or string and did not object to it, but there was no positive testimony that the company ever otherwise authorized or approved of it. On the 12th of January, 1874, the plaintiff commenced work in the dye-house at seven o'clock A. M. At that hour the light was still imperfect. The room, too, was full of steam or vapor rising from the liquors boiling in the vats, so that at the sides and in the corners it was difficult to see with distinctness. In the corner occupied by the plaintiff there was no light to lessen the obscurity. The accident occurred at fifteen minutes after seven o'clock in the morning. The plaintiff was looking or feeling for the rope, the looped end of which had fallen on the floor, and having found it, was lifting it between his thumb and forefinger, when his little finger, catching in the corner gears, drew his hand after it, causing the injury complained of. He was at the time thirty years of age, and, for anything that appears, of ordinary intelligence. After the accident the corner gears were more completely covered and the floor and gig repaired.

The testimony submitted by the plaintiff was contradicted in several of its most vital points by the testimony submitted by the defendant corporation. The defendant presented numerous requests for specific instruction to the jury, which the court either declined to grant or granted with qualifications. The petition for a new trial rests on the grounds that the verdict was against the evidence, and against the law as laid down by the court, and that the court erred in refusing to instruct the jury as requested. We do not think it is necessary, in the view which we take of the case, to state in detail either the testimony of the defendant or the requests for instruction. The fundamental question,

however variously it may be presented, is whether, on the plaintiff's own testimony, there is any case which entitles him to a verdict? We will address ourselves directly to that question, assuming for that purpose that the testimony submitted by the plaintiff is true.

The plaintiff claims that the injury which he received resulted from a combination of causes, for each of which the defendant was to blame. He contends that if the room had been duly lighted, or if the gig had been kept in good working order, or if the corner gears had been properly boxed, the accident would not have occurred. He also contends that the corporation negligently permitted these causes to exist when it was under obligation to him, as its employee, to remove them or protect him against them. Let us consider whether this proposition can be maintained.

1. Was the corporation under any obligation to have its dyehouse lighted on the morning of the accident? It does not appear that it had ever been usual to light up even on the shortest mornings. The plaintiff, who had worked four years as gig-tender, must have known that the room was not likely to be lighted. If, then, the absence of lights was dangerous, it was a danger incident to his employment which he voluntarily incurred. We do not find a particle of evidence to support the claim that the corporation was under any obligation to the plaintiff to have the room lighted, unless the exposure of the corner gears made it obligatory, and we shall hereafter consider whether it was bound to guard him against that danger.

2. Was the corporation under any obligation to the plaintiff to keep his gig in good working order? We cannot find that it was. A manufacturer has the right to keep a machine in use after it has become old and defective, unless its defects expose the operative to some latent or extraordinary danger. *Hayden v. Smithville Manufacturing Company*, 29 Conn. 548. It is not pretended that the gig on which the plaintiff worked exposed him to any such danger. It endangered not him, but the cloth which was dyed on it. The plaintiff concedes this, but he urges that its defects led him to have recourse to the string, and the use of the string led to his injury by the gears. The string, however, was his own contrivance. If it was dangerous, he must have known

in what way it was dangerous, at least as well as the defendant. Even if the defendant, by not objecting, can be held to have approved or authorized the use of the string, it did not direct its use, and, therefore, did not make its contrivance and use any less the voluntary act of the plaintiff. If its contrivance and use was a fault, it was a fault in which the plaintiff, if not solely responsible for it, at least participated, and, therefore, on familiar principles, he cannot charge the defendant. But, strictly speaking, any consideration of the string is immaterial, unless the defendant is responsible to the plaintiff for the exposure of the corner gears ; for the string was not dangerous in itself, but dangerous only by reason of its attachment to the iron brace near those gears. We therefore come to the really important question in the case.

3. Was the corporation under any obligation to the plaintiff to repair the defect in the boxing of the gears ? The testimony does not show precisely how long the plaintiff had tended the gig nearest the gears, nor when the gears became dangerous. The danger may possibly have existed when he first accepted service on the gig. If so, the danger being manifest, he must be held to have assumed the risk from it ; for a person who voluntarily enters a dangerous service, knowing the danger, takes the risk upon himself and cannot look to his employer for damages if he is injured. We infer, however, that the gears became dangerous by the breaking of the boxing after his service near them begun. This being so, if, when the danger occurred, the plaintiff had notified the defendant of it, and had been induced to remain in his position by assurances that it should be remedied, or, as some of the cases hold, by a reasonable expectation that it would be remedied, then it would not necessarily be presumed from his knowledge of the danger that he had assumed the risk. *Holmes* v. *Clarke*, 6 H. & N. 349; 7 H. & N. 937 ; *Holmes* v. *Worthington*, 2 Fost. & F. 533 ; *Patterson* v. *Pittsburgh & Connellsville Railroad Company*, 76 Pa. St. 389 ; *Kroy* v. *Chicago, R. I. & P. Railroad Company*, 32 Iowa, 357. But the plaintiff did not notify the defendant of the danger. He remained exposed to it for weeks without protest or complaint. He must, therefore, be held to have consented to the exposure, and so, upon familiar principles, cannot recover for the injury received in conse-

quence. This is so clear that it seems hardly necessary to cite cases in support of it. We will, however, refer to a few of the many cases which are in point.

The case of *Sullivan* v. *India Manufacturing Company*, 113 Mass. 396, closely resembles the case at bar. There a boy of fourteen was caught in the gearing of a machine near which he was employed. The court ruled that if he had such instruction or knowledge as would enable him with reasonable care to do his work with safety the defendant would not be liable, no matter where the knowledge was obtained. On motion for a new trial, after verdict for the defendant, the court thus stated the law : When the employee "assents to occupy the place prepared for him and incur the dangers to which he will be exposed thereby, having sufficient intelligence and. knowledge to enable him to comprehend them, it is not a question whether such a place might with reasonable care and by reasonable expense have been made safe. His assent has dispensed with the performance on the part of the master of the duty to make it so. Having consented to serve in the way and manner in which the business .was being conducted, he has no ground of complaint, even if reasonable precautions have been neglected."

This was declaring the law strongly as applied to a boy of fourteen ; but we do not think it is too strong for a man of the plaintiff's age and experience.

In *Sullivan's Administrator* v. *Louisville Bridge Company*, 9 Bush, 81, the plaintiff's intestate fell from a narrow plank erected over a river where he and others were engaged to pass stones for the construction of a bridge. It appeared that he and others had hesitated before the accident about going on the plank, but being told to do it or go home, had done it, and falling into the river was drowned. The court refused to disturb a verdict for the defendant, upon the ground that he had voluntarily taken the risk.

In *Ladd* v. *New Bedford Railroad Company*, 119 Mass. 412, the plaintiff, an employee of the corporation, was riding in a railway car which was thrown down a bank. One cause of the accident was alleged to be a want of check-chains. But it appeared by the testimony of the plaintiff, who had long been in the employ of the corporation, that he knew that some of the

trains were without check-chains, and had said they were not safe. It was held that he was not entitled to recover for the injury he had received, on the ground that he had voluntarily taken the risk.

In *Dillon* v. *Union Pacific Railroad Company*, 3 Dill. 320, the plaintiff, who was a locomotive engineer, was put in charge of an engine which had no signal bell, and the court held that he was not entitled to recover for an injury which he claimed to have suffered in consequence, because he knew when he took service on the engine that it had no signal bell. See, also, to the same effect, *Ogden* v. *Rummens*, 3 Fost. & F. 751; *Dynen* v. *Leach*, 26 L. J. N. S. Exch. 221; *Gibson* v. *Erie R. R. Co.* 63 N. Y. 449.

It is true the rule is not rigidly enforced against persons who are too young or too ignorant to appreciate the dangers to which they are exposing themselves; *Coombs* v. *New Bedford Cordage Company*, 102 Mass. 572; *Grizzle* v. *Frost*, 3 Fost. & F. 622; *Laning* v. *N. Y. Central R. R. Co.* 49 N. Y. 521; *Hill* v. *Gust*, 55 Ind. 45; and especially if the employer permits the danger to exist in violation of the statute law. *Britton* v. *Great Western Cotton Co.* L. R. 7 Exch. 130.

But in the case at bar we find no such reason for relaxing the rule. In this State there is no statute requiring a manufacturer to fence or cover his machinery. And the plaintiff had age, intelligence, and experience enough to appreciate the risk he was running. Indeed he does not pretend that he did not appreciate it. His case is the bald case of a person who continues to work where he is exposed to a danger which he knows and fully appreciates without complaining of it, and without any promise or assurance that it shall be remedied, and not merely for some temporary purpose or under stress of some special exigency or request, but deliberately and for days and weeks together, and therefore, whatever the risk, he must be held to have *consented* to it as one of the perils of his employment.

We think the plaintiff, even on the testimony as presented by himself, is not entitled to recover, and consequently that the verdict should be set aside as being against the evidence, and a new trial granted.

POTTER, J., concurring. While I concur with the other mem-

bers of the court in the result, I wish to add a few remarks. The charge of the court as a whole agreed substantially with the views of the law taken by the counsel for the defendant, and was all that the defendant had a right to ask except on the point I shall presently mention.

If the court does not charge in the words requested, but qualifies them in any manner, the question arises whether the charge as given is correct.

The Supreme Court of the United States, in the case of *Railway Co.* v. *McCarthy*, 6 Otto, 258, 265, decided at the October Term, A. D. 1877, says upon this matter: " It has been repeatedly determined by this tribunal that no court is bound to give instructions in the forms and language in which they are asked. If those given sufficiently cover the case and are correct, the judgment will not be disturbed, whatever those may have been which were refused."

The direction given about the string was not sufficiently plain. The jury might have inferred from it, and probably did infer, that if the string which was put on by the plaintiff in order to facilitate the operation of the machine was affixed with the knowledge or consent of the defendants' agents, the corporation would be liable; whereas, even if the agents of the corporation had themselves affixed it with the knowledge of the plaintiff, he would still be obliged to run the risk of the danger. And for this, I think a new trial should be granted.

And I can find nothing in the evidence to take the present case out of the ordinary rule, that a person who enters into such an employment knowing the defects of the machinery, must be held to have taken the risk on himself.            *Petition granted.*

*Francis W. Miner & William G. Roelker*, for plaintiff.

*Benjamin F. Thurston* and *E. C. & S. Ames*, for defendant.