CASE 84—ACTION BY ELLA ROUSE AGAINST THE LANG-
DON-CREASY CO. FOR DAMAGES FOR PERSONAL
INJURIES.—March 24, 1903.

# Langdon-Creasy Co. v. Rouse.

## Appeal from Grant Circuit Court.

From the judgment the defendant appeals.—Reversed.

1. Master and Servant—Negligence—Unsafe Lamp—Continuance.—Appellee was manager of a store of appellant, and had held said position for several months, and was injured while lighting a gasoline lamp in the store, for which she recovered $2,500 damages on the ground that same was unsafe and dangerous. On appeal, appellant insists that the court erred to its prejudice in refusing to grant a continuance on account of the absence of one member of the firm, who was in attendance at the bedside of his dying mother. Held, that a continuance should have been granted, as the reason therefor was sufficient, and the error was not cured by permitting the affidavit of the attorney as to the statements of the witness to be read as evidence, as the proper effect of his testimony could be had only by his personal presence.

2. Instructions.—The court properly refused to give a peremptory instruction to find for appellant, as it is difficult to determine from the testimony whether the accident was the result of some defect in the lamp or negligence on the part of appellee. The court properly instructed the jury that it was the duty of defendant to have furnished a reasonably safe lamp for lighting their store, and if the lamp furnished was unusual in its operation, or dangerous in its possibilities, to have instructed the plaintiff as to its proper use, and warned her of possible danger that might arise in lighting it. The instruction was misleading which required appellant to maintain the lamp in good condition. It was the duty of appellee to maintain it in good condition.

3. Evidence.—The court properly refused to permit an expert witness to practically demonstrate before the jury the manner of filling and lighting the lamp. The admissibility of testimony of this character is one that should be left to the sound discretion of the trial court.

A. G. DeJARNETT, WADE CUSHING and T. L. EDELEN for appellants.

W. W. DICKERSON and O. H. HOGAN for appellee.

OPINION OF THE COURT BY JUDGE BURNAM—Affirming.

This suit was brought by appellee, Ella Rouse, against the appellant, the Langdon-Creasy Co., to recover damages for injuries sustained by her in lighting a gasoline lamp in the store house of the appellant at Williamstown Kentucky, on the 22nd day of March, 1901. The record discloses that appellee had been in the employ of Langdon & Creasy, a partnership, as manager of their grocery store located at Williamstown in Grant county from some time in October, 1900, until the 7th day of March, 1901. On that day the store was transferred from the partnership of Langdon and Creasy to the Langdon-Creasy Co., a corporation organized under the laws of this State. After the transfer of the store to the new corporation, appellant continued in its employ as general manager having authority to employ a porter, and, when the necessities of the business required it, additional clerical assistance. The headquarters of the corporation was in Cincinnati, Ohio, and they owned and operated quite a number of similar stores located at different points in the State of Kentucky. The gasoline lamp, which it is charged occasioned the injury, had been used for lighting the store for several months previous to the date of the accident, and had been under the special management of the appellee. It also appears that she had clerked in the store belonging to Langdon & Creasy at Eminence, Ky., for some months previous to her

transfer to Williamstown as manager of the store there, the Eminence store was lighted in the same way, and she had observed the operation of the lamp there, although not specifically charged with any duty in connection therewith. It is also shown that some time in November, shortly after taking possession of the store as manager, that she complained to appellant that the lamp would not light, and at their instance, it was forwarded to the manufacturers at Cincinnati for examination; and that on November 25th, it was returned by them to her with a letter in which they say they could find no trouble with the lamp, and at the same time enclosed to her printed instructions as to its management. This letter wound up with these words:

"The instruction on the first page of the circular carefully followed will give you perfect success. The whole thing in a nut shell is just this, put two quarts of gasoline in the bowl, screw the filler tap on tight, attach the pump to the air valve, open the thumb screw two or three turns and pump in twenty-five or thirty strokes of the pump. Before pumping in the air, see that the light valve is firmly closed. Now heat the generator with the alcohol torch as directed then open the light valve still holding the lighted torch above the top of the chimney, in about fifteen seconds the gas will form, pass around the gas tube to the burner where it will light from the torch you are holding at the top of the chimney. All this is only a brief repetition of the directions on the circular, which if you will read and carefully follow, you will have no trouble.

"Very truly yours,
"THE PERFECTION BURNER CO.,
"A. B. Tremer, Manager."

Whilst these instructions appear somewhat confusing it is very easy to understand them when we have the lamp itself before us, and for purposes of illustration a photographic copy of the lamp filed with the brief of counsel for appellant is filed with the opinion. The bowl of the lamp holds about six quarts of gasoline. It has two openings, one indicated by the letter B, the other by the letter C. The lower end of the gasoline tube at the left of the lamp is open near the bottom of the bowl. At A is a valve which permits the gasoline to flow into the metal tube D. The funnel encircles the end of the gas tube and into which vaporized gas flows, which furnishes the fuel for the light. The instructions require two quarts of gasoline to be poured into the opening in the side of the bowl at B. At C is a valve which is closed by a screw, and upon the tube projecting therefrom the air pump is attached. The instructions direct that the gasoline should always stand below the opening C. The air pressure forces the gasoline up the gasoline tube to the valve at A. The directions require that the hollow tube D should be heated by a lighted sponge saturated with alcohol, before the valve at A is opened, when the liquid gasoline is forced into the hot tube, it is converted into gas, which is carried across the open space between the tube D and the gas tube at the right of the lamp and from this point finds its way through the gas tube to the burner, where it is ignited.

The negligence in connection with this lamp with which appellant is charged by appellee, is that the appliance was new to her and that she was not familiar with its operation and management; that she did not know that it was dangerous; that appellant knew that it was unsafe and dangerous and likely to explode and

failed to acquaint her with these facts and the risks and hazard attending its lighting and use. Appellant denied that the lamp was dangerous or that its management was difficult to understand, or that appellee did not thoroughly understand its management and had not received full instruction with reference thereto, and alleges that she had been carefully instructed with reference to its management; that she was their manager in conducting the store, and charged that the injury resulted from her own negligence in disregarding the instruction given her with reference to its management, and also charged that it was the duty of the porter to light the lamp. A trial before a jury resulted in a verdict for plaintiff for $2,500, which we are asked to reverse upon several grounds. First, upon the calling of the cause for trial the appellant moved for a continuance, and in support of the motion filed the affidavit of one of the attorneys in which he says that H. C. Langdon, the President of the corporation, and who resided in Cincinnati had expected to attend the trial and testify as a witness, but that on the day before he had been called to the bedside of his sick mother, who was reported to be dying; that he would testify "that he purchased the lamp with about sixty others for the use of the various stores owned by Langdon & Creasy and that previous to and at the time of the purchase he had been assured by large numbers of persons who were using them, that they were perfectly safe and free from danger; and that he had tested and used them in many places and by many employees and had always found them perfectly safe; and that neither he nor any member of the firm had been advised of any danger or hazard in lighting them previous to the accident complained of." The trial judge struck

out of the affidavit the facts recited above, and permitted the rest of the affidavit to be read as the deposition of the absent witness, and then overruled the motion for a continuance. We are of the opinion that the trial court erred in refusing to allow evidence to show that appellant before purchasing the lamps for use in the store had acquainted himself with its character, operation and safety, and he was also entitled to show exactly what steps he had taken in this regard. Besides we think it is apparent that the presence of appellant before the jury to explain these facts would have been very much more effectual than the mere affidavit of his attorney. And it seems to us that the dying condition of his mother was a good cause for his non-attendance at the trial. As said by this court in Peebles v. Ralls, 11 Ky. 26, in deciding the diligence necessary to be observed by suitors:

"We should not altogether lose sight of the sympathies of our nature and require a father or husband to abandon his child or wife at the moment of apprehended death for the purpose of attending the trial of a pecuniary contest."

The rule it seems to us also applies to the case of the mother. We are therefore of the opinion that the trial court erred in not granting the continuance, and also in excluding as incompetent evidence the portions of the affidavit which were stricken out.

It is difficult to determine from the testimony whether the accident was the result of some defect in the lamp or negligence on the part of appellee. No one was in the store when it occurred. She testifies in substance that when she attempted to pump air into the reservoir, she discovered that the cylinder was too full, as the gasoline ran out of the pump tube; and that she thereupon poured out of the lamp

two pints of gasoline and took them upstairs and poured them into the gasoline reservoir; and that when she returned she wiped the gasoline off of the lamp; that she then pumped air into the lamp as directed and applied the alcohol torch to the generator until it was hot, then opened the lighting valve at A to let the gasoline flow into the generator, and continued to hold the torch under the generator until it was burned out, but that it did not light; that she then turned the gas off, waited until the generator got cold and took the same steps over again; that again the lamp failed to light; that for the third time after the generator got cold, she pumped in air, heated the generator and when she attempted to light it a quantity of "stuff" came out, and a little blaze fell on her jacket and skirt; that she did not know what caused it, but began to scream for help and try to extinguish the flame. Those who ran to appellee's assistance found the lamp burning all right on the counter, and the alcohol torch lighted upon the floor. Different theories are advanced as to the cause of the accident. Counsel for appellee says that it is clear from her testimony that the liquid gasoline had free passage to and through the generator, but that the gas tube on the right of the cylinder was so obstructed that the gas could not pass through it to the burner, and was therefore set free and permeated the atmosphere until it reached the torch, when it ignited. The fact, however, that the lamp was burning all right after the accident seems inconsistent with this theory, as no sufficient explanation is given why the gas immediately after the accident should have passed through the gas tube all right to the burner, if as contended it was obstructed. Besides it is perfectly apparent from an examiation of the lamp that

it is easy to remove this gas tube and to have cleaned it out, if it was so obstructed. Counsel for appellant on the other hand, in speculating as to the probable cause of the accident, says that appellee either failed to pump in enough air to force the gasoline through the gasoline tube, or that she allowed the gasoline to be forced into the generator before it was hot enough to convert it into gas; and that when the generator did get hot enough to vaporize the gasoline, it blew the liquid gasoline through tube D in liquid form; and some of this gasoline fell upon the clothes of appellant and was ignited with the alcohol torch. This theory is, however, directly contrary to the sworn testimony of appellant. Under this state of fact, the question of negligence was for the jury, and we think the court properly refused the motion for a peremptory instruction.

Upon the trial defendant produced before the jury as an expert witness, one of the officers of the corporation engaged in the manufacture of the lamp and asked that he be permitted to practically demonstrate before the jury the manner of filling and lighting the lamp. This testimony was objected to on the ground that the witness had had the possession of the lamp for several hours before the proposed experiment, and that it might not be in the same condition as when the accident occurred. For this reason the court refused to allow the experiment to be made in the presence of the jury. The admissibility of testimony of this character is one that should be left largely to the sound discretion of the trial court. Judge Thompson in his work on Trials, vol. 1, Sec. 620, says that:

"Experiments in the presence of the jury are generally discountenanced owing to the liability of the

jurors being imposed upon by skillful manipulation or jugglery. But experiments coming within the range of ordinary knowledge may well be permitted.''

In the note to Lenard v. Southern Pacific Co., 15 L. R. A., 221, the annotater says:

''This may be perhaps regarded as a correct theoretrical statement of the rule, and if it is adopted the conflict will come in determining what matters come within the range of ordinary knowledge or experience and what not.''

In view of all the testimony in this case we are not prepared to say that the trial court erred in refusing to allow this demonstration to be made by the expert in this particular case.

In instruction A given to the jury, they were told:

''That it was the duty of the defendant to furnish the plaintiff a reasonably safe lamp and appliance for lighting the store; and that the plaintiff had the right to rely upon the defendant to provide a reasonably safe and suitable appliance for that purpose and to maintain it in a reasonably safe condition, and to instruct the plaintiff in the proper use of same, and to warn her of any danger to her in lighting it if there was any. And it was the duty of the plaintiff to exercise ordinary care in lighting and using the same to avoid danger. But if the jury shall believe from the evidence before them in this case that the defendant negligently and carelessly furnished to the plaintiff a lamp or appliance for lighting their store that was not reasonably safe to light or use, and failed to instruct her in the proper use of the same, or to warn her of the danger if any to her in lighting same; and that the plaintiff did not know and could not by ordinary care discover the danger in lighting same; and that while plaintiff was exercising ordinary care in

attempting to light the same, said lamp did expel from it burning gas or gasoline, which ignited and burned the face, hand, neck and clothing of the plaintiff, then the law is for the plaintiff and the jury should find for the plaintiff such damage as will compensate for the burning, suffering, loss of time, any permanent impairment of her ability to earn money and such sum as she was compelled to expend for medical attention, nursing and board, not exceeding in all $5,000.00, the amount claimed in the petition.''

It was the duty of the defendant to have furnished a reasonably safe lamp for lighting their store, and if the lamp furnished was unusual in its operation, or dangerous in its possibilities, to have instructed the plaintiff, as to its proper use and warned her of possible danger that might arise in lighting it. The instruction quoted, supra, was misleading in requiring them to have maintained the lamp in good condition. Appellee was the manager of appellant's business at Williamstown, and it was her duty to see that the lamp was kept in good condition, and if it failed to perform its office to have it set aside and used the coal oil lamp provided for such an emergency. The testimony shows that it was only at intervals that the auditing agent of the defendant corporation visited the store for the purpose of taking stock and auditing the accounts of appellee as manager. All responsibility for the proper management of the store was upon her, and she should not be allowed to shift this responsibility to her employers, who lived in a distant city and could have had no personal knowledge as to whether the lamp was maintained in good condition or not. Their duty was discharged when they furnished a safe appliance. Her duty required that it should be maintained in the same order or its use

discontinued. This principal is fully illustrated in the following cases, Sullivan's Admr. v. Louisville Bridge Co., 72 Ky. 81; Alexander v. L. & N. R. R. Co., 83 Ky. 589; Boganschutz v. Smith, 84 Ky. 330; Kelley v. Barber Asphalt Co., 93 Ky. 262; the Lexington and Carter County Mining Co. v. Stevens Admr. 104 Ky. 502; Hood v. Augunot, 23 Rep. 460. It therefore follows that the judgment appealed from must be reversed and cause remanded for proceedings not inconsistent with this opinion.