## JOHN W. FOSTER v. LEA PUSEY.

*Master and Servant—Instruction to Servant.*

A master is obliged to furnish his servant with a reasonably safe place to work in and reasonably safe machinery to work with.

Where the plaintiff, being ignorant of the machinery in defendant's mill, is given employment, and after three or four days of instruction is left to run a machine, if, after having discovered defective condition of the machinery, he remain at work and fail to notify his employer of such defect he cannot hold his employer liable for injuries sustained thereby.

In such case the mill-owner is responsible for the acts or omissions of the manager or superintendent of the mill, or any part thereof, within the scope of his line of supervision.

If instruction was given plaintiff in the manner of operating the machine safely, such as would justify defendant in believing that he had done his duty in this respect, and such as most men under like circumstances would have done, the defendant cannot be held liable for injuries to plaintiff through ignorance or carelessness.

In cases of such dangerous employment the servant takes upon himself the usual risk of his employment, in the absence of an agreement to the contrary.

(*New Castle, May 25, 1888.*)

ACTION for damages for injuries sustained by plaintiff, while working in defendant's mill, by getting his hand caught in a shoddy-machine. The jury disagreed.

John W. Foster, the plaintiff, said he went to work in Pusey's mill June 16, 1886, was assigned to the shoddy machine, his duty being to place shoddy on the feed table of the picker. This machine frequently became clogged and was in that condition the day his hand was injured. Witness said he had stopped the picker and on putting his hand inside the cylinder in order to remove the tangled material the main belt slipped back upon the tight pulley owing to the imperfect guides, and started the machine. His hand was so badly crushed that amputation was necessary. While employed at the mill his wages had been $6 per week.

Charles Harp, Jr., stated that he had worked in Pusey's mill

for eighteen months. Had been at the same machine used by the plaintiff by which he was injured. Had frequently complained of the condition of the shoddy machine, and both Mr. Pusey and the mill machinist had promised to make the necessary repairs. The belt frequently flew from the loose to the tight pulley. It had done so at least twenty times and witness reported the fact time and again until he was tired. His fingers had been caught and injured several times. The witness explained the workings of the picking machine and declared emphatically that it was dangerous; so dangerous that he (witness) had refused to feed it and asked Mr. Pusey for another job, which was eventually given him.

Doctor T. A. Keables: In June, 1886, was called to examine the plaintiff who was suffering great pain from a badly lacarated hand. The thumb was completely torn from its socket; the flesh and bones were stripped from the palm and back of the hand and nothing remained but strips of flesh and tendons. Immediate amputation was necessary and the operation was successfully performed.

Charles Harp had worked for the defendant for two or three years and had been familiar with shoddy machines from his youth up. Was the father of the first witness. Witness considered the Pusey picking machine in which plaintiff's hand was torn as being in a bad condition. His son made constant complaint and frequently threatened to leave the mill on that account.

Joshua A. Baldwin, said he worked the shoddy machine after the plaintiff was injured. The machine was then in excellent repair; both guides were on and every thing worked smoothly. This was three or four weeks after Foster was hurt. The witness was present when the accident occurred, and threw off the cylinder belt when the plaintiff's hand was caught in the machine. The belt guide was broken at that time.

At this point the plaintiff rested his case. Mr. Vandegrift of defendant's counsel, moved for a non-suit on the ground that the plaintiff had received full notice of the dangerous condition of the

machine, and was guilty of contributory negligence in continuing to work thereat. Numerous authorities were cited by the counsel for the defendant, all of which were met by Mr. Bird with the insistment that while the law governing contributory negligence was not disputed the present case was one where a promise to repair the machine in question changed the aspect and created a new contract in which the employer said impliedly that if anything happened to the employe while the machine was out of repair he stood ready to abide by the results.

Florence A. Pusey, the defendant's daughter, who acted as clerk in the office of the mill, testified to having heard the elder Harp say that the plaintiff's hand was injured through his own carelessness. After the injury witness had frequently called at the Foster residence and inquired as to the young man's condition, at the same time taking him fruit and other delicacies.

Lea Pusey, the defendant, testified to being the proprietor of the shoddy mill wherein the plaintiff had worked. He explained in detail the working of the wadding machine and contradicted the evidence given by the two Harps and the plaintiff as to its condition, and especially as to the natural inclination of the main belt to shift from the fast to the loose pulley. No complaint had ever been made to witness by the plaintiff concerning the condition of the machine. Mr. Pusey also flatly contradicted the sworn statements made by the Harps concerning the complaints alleged by them to have been made to him. He denied having had any knowledge of repairs made to the shoddy machine after Foster was hurt. If any were made it was without his knowledge. Touching the assertion made by young Baldwin as to the repairing done after the Foster accident, the witness averred that repairs were made by Ainsworth, the machinist, without any instruction from him. It also came out during the cross examination that witness had gone to Baltimore for the pupose of seeing the younger Harp and getting his evidence provided the same was favorable to the defendant.

William Ainsworth, employed at the wadding mill as machinist, had been in the employ of defendant since 1884. Prior to that time worked in Riddle's Mills. His experience as a machinist covered a period of 23 years. The witness declared that the tendency of the main belt was to run from the fast to the loose pulley. Did not know that the right hand guide was broken when the accident to young Foster occurred. Owing to the sway of the belt the left hand guide was the more likely to break. He also stated that the plaintiff had never complained to him of the condition of the shoddy machine. Witness also contradicted the younger Harp's evidence upon that point. After describing the method of cleaning the shoddy screen, witness stated that he had met the plaintiff, Foster, shortly after his recovery from the accident and told him that the injury received was due to carelessness in putting his hand near the cylinder. Plaintiff had replied: " Well, perhaps Mr· Pusey will have to pay for it." In endeavoring to explain the inclination of the main belt the witness testified that he had never seen the belt run from the loose to the tight pulley, and had not worked on the machine more than two or three hours all told. He had repaired the cog-wheels some time after Foster was injured; the guide as soon as he knew of its broken condition.

William M. Walraven stated that he had worked for Mr. Pusey about nine or ten years. Was there when Foster began work, and explained to him the method of working the shoddy machine upon which he himself had been employed. Witness thought the machine, when clogged, could be cleaned without putting a hand in such a position as to endanger the operator. The inclination of the main belt was from the fast towards the loose pulley, and the absence of the right guide would make it incline in the same direction. Plaintiff had said in the presence of the witness some time after the accident:

" It is done ; it was my fault and can't be helped."

Witness also stated that the right hand guide was on during the time he was instructing the plaintiff.

Had never seen the right guide off until after the accident and then running the machine himself, used a broom to move the belt. Witness contradicted Ainsworth's testimony as to the immediate replacing of the guide after Foster had been hurt, by stating that it had not been repaired until two days after. If the guide had been there and the belt turned to the loose pulley, there would have been no possible way for it to return to the tight pulley.

Levi Berry testified that he had run the shoddy machine for for three weeks and then received an injury to his hand by getting it in the feed rollers. He lost the end of one finger and then left the mill. As to the guide, the testimony of the witness on cross-examination was the same as that of the previous witness. If the guide had been in place the belt could not have slipped from the loose to the fast pulley.

Shortly before the hour of adjournment Mr. Vandegrift asked that the Court allow a postponement until morning in order that a witness not present might be examined. Mr. Bird objected unless the defense disclose the character of the testimony expected, and upon this understanding the court adjourned until 10 o'clock this morning.

In rebuttal Mr. Bird called Edward Simmons who swore that the belt travelled in the opposite direction—from the loose to the tight pulley. Mr. Bradford objected to the introduction of such contradiction on the ground that in his direct examination he had not prepared the way for it. Mr. Bird maintained that plaintiff's witnesses had shown the inclination of the belt to be in one direction while the defendant had insisted that it moved in a directly opposite way.

The court decided in favor of plaintiff's counsel; witness stated that when he worked at the shoddy machine the right hand guide was broken. Mr. Bradford protested against the introduction of supplementary and corroborative testimony in rebuttal. The court sustained Mr. Bird and defendant's counsel took exception to all questions upon this point. The witness said he had known the belt

to work from the slack to the tight pulley. He worked on the machine for six months, nearly a year before Foster was injured. In cleaning the clogged machine he always used his left hand, but whether the right or left hand was used, the cylinder belt would be in such a position that it could not be seen without turning the head to the right.

John Giverson said he had worked at the shoddy machine two or three weeks after Foster was injured. At that time the right guide was off. Witness went to Mr. Pusey and told him of the fact. He was told to go to Ainsworth, which he did, and Ainsworth told him the guide would be replaced as soon as he (Ainsworth), had time. Afterwards Ainsworth made a guide and witness put it on.

Joseph Dillman testified that he had worked on the machine just before Foster began, the latter taking witness's place. He worked four days, and the right guide was broken and off during that time. Quit work because the machine was dangerous. Had seen the belt run from the loose to the tight pulley.

Lincoln L. Jones also worked at the machine in question before and after Foster was injured. The right guide was broken once, and witness called the foreman's attention to the fact; the belt would constantly work from the loose to the tight pulley.

Both sides rested, and Mr. Bird began his argument to the Court on the law involved in the case.

Defendant's counsel proposed to take the jury to view the wadding machine, in order that its practical working might be witnessed. Mr. Bird objected and the Court held that additional testimony was not in order.

*Levi C. Bird,* for the plaintiff:

Where the servant discovers a defect in the machinery at which he is employed, and gives notice thereof to the master, or to the person whose duty it is to keep the machinery in repair, and is

promised that the defect shall be remedied : his subsequent use of
it in the well grounded belief that it will be put in proper condi-
tion within a reasonable time, does not necessarily, or as a matter
of law, make him guilty of contributory negligence. It is a ques-
tion for a jury whether in relying upon such promise, and using
the machinery after he knew its defective condition, he was in the
exercise of due care.

*Patterson v. Wallace*, 28 E. L. & Eq., 48 ; *Clark v. Holmes*,
7 H. & N., 937 ; *Hough v. R. R.*, 100 W. S., 213 ; *Manfg. Co. v.
Morresey*, 40 Ohio St., 148 ; *Parody v. R. R.*, 15 Fed. Rep., 205 ;
*Green v. Minneapolis, &c., R. R.*, 47 Amer. Rep., 785 ; 31 Minn.,
248 ; *Counsell v. Hall*, 14 N. E. Rep., 530 ; *Lanning v. N. Y.
Cent. R. R.*, 49 N. Y., 521 ; *Hanley v. R. R.*, 82 N. Y., 370 ;
*Patterson v. Pittsburgh R. R.*, 76 Pa. St., 389 ; *Eureka Co. v. Bass.*,
60 Amer. Rep., 152 ; *Richmond v. Normint*, 4 S. E. Rep., 211 ;
*East Tenn., &c., R. R. v. Duffield*, 47 Amer. Rep., 319 ; *Texas, &c.,
R. R. v. Kane*, 15 A. & E., 219 ; *Vinton v. Schwab*, 32 Vt., 612 ;
*Bretton v. Great Western Cotton Co.*, 7 L. R. Exch., 130 ; *Sioux
City R. R. v. Finlayson*, 18 A. & E., 68 ; *Conroy v. Vulcan Iron
Works*, 62 Mo., 35 ; *Missouri Furnace Co. v. Abend*, 107 Ill., 44 ;
47 Amer. Rep., 425 ; *Snow v. Housatonic R. R.*, 8 Allen 445.

Text writers :—

*Sherman & Redfield Negligence*, Sec. 215 ; *Cooley Torts*, 559 ;
*Patterson's R. R. Accident Law*, 381–382 ; *Horace Smith's Negli-
gence*, star paging 70 ; *Whittaker Smith's Negligence*, 136 ; 2 *Thomp-
son on Negligence*, 1009, Sec. 16 ; *Wood, Master & Servant*, Secs.
352–378 ; *Wharton Negligence*, 372.

*Little Rock, &c., R. R. v. Ewbanks*, 31 A. & E., 176 ; *Rich-
mond, &c., v. Normint*, 4 S. E. Rep., 211 ; showing *extent* to which
recent cases have gone.

Complaint to the machinist, charged with the duty of repair-
ing machinery, is as binding upon the master as complaint to
master.

*Manfg. Co. v. Morrissy,* 48 Amer. Rep., 669; *Green v. Minn., &c., R. R.,* 47 Amer. Rep., 789; 66 Me. 420; *Senior v. Word,* 1 E. & E., 385.

The duty of the master to provide proper and safe machinery being imperative upon him cannot be delegated to another fellow servant so as to relieve him from responsibility to a servant injured thereby. The servant does not assume the risk arising from the negligence of the master in failing to provide proper machinery, and keep it in proper repair. It is one of the well defined exceptions to the general rule of fellow servants.

*McDade v. Wash. & Georgetown R. R.,* 26 A. & E., 330; *North. Pacific R. R. v. Herbert,* 116 U. S., 652; *Beeson v. Green Mt., &c., Co.,* 57 Cal., 20.

There is an important distinction between knowledge of *defects,* and knowledge of *risks,* on the part of the servant.

*Cook v. St. Paul, &c., R. R.,* 24 N. W. Rep., 312; *Russell v. Minneapolis, &c., R. R.,* 20 N. W. Rep., 147; *Pantzor v. Tilley Foster, &c., Co.,* 2 N. E. Rep., 24.

A master is bound to provide reasonably safe machinery and appliances for the use of his servants. *Sher. & Red. Negligence,* Sec. 194; *Hough v. R. R.,* 100 U. S., 213; *Wharton's Negligence,* Sec. 211, and cases in note 1, 193; *Whittakers Smith's Negligence,* 125, and cases in note, 125; 2 *Thompson on Negligence,* 972, 973, and cases in note 1, 973; *Bush Contrib. Negligence,* Sec. 123; *Patterson R. R. Accident Law,* 300.

No distinction between knowledge of defects at time of employment, and after discovery of same, when promise to repair has been made.

*Snow v. Housatonic R. R.,* 8 Allen, 444; *Green v. Minneapolis, &c., R. R.,* 47 Amer. R., 785; *Ford v. Fitchburg, &c., R. R.,* 110 Mass., 260; *Hough v. R. R.,* 100 U. S., 213; *Manfg. Co. v. Morrissy,* 48 Am. Rep., 669.

Master is bound to inform unexperienced servant of the danger

and risk of the servant. Particularly of machinery where defects are known to master.

*Parkhurst v. Johnston,* 45 Amer. Rep., 28; *Jones v. Florence, &c., Co.,* 57 Amer. Rep., 269; *Bowling v. Allen,* 41 Amer. Rep., 298; *Coombs v. New Bedford, &c., Co.,* 102 Mass., 572; *Wood, Master and Servant,* Sec. 349, 718.

*Edward G. Bradford* and *Lewis C. Vandegrift,* for the defendant:

An employer is not bound to furnish for his workmen the safest machinery, nor to provide the best methods for its operation. If the machinery be of an ordinary character, and such as can, with reasonable care, be used without injury to the employe, it is all that can be required from the employer.

*Chicago R. I. & P. Co. v. Londergan,* 7 N. E. Rep., 55; *Rock v. Indian Orchard Mills,* 8 N. E. Rep., 401; *Hickey v. Taaffe,* 12 N. E. Rep., 286; *Gilbert v. Guild,* 12 N. E. Rep., 369; *Shaffer v. Haish,* 1 Atl. Rep., 575; *Brew v. Gaylord Coal Co.,* 4 Atl. Rep., 214; *Grimont v. Hartman,* 5 Atl. Rep., 312; *Wormell v. Maine Cent. R. Co.,* 10 Alt. Rep., 49.

Burden is upon plaintiff to negative contributory negligence on his part, and if the evidence does not, in the opinion of the jury, establish proper care or prudence on his part negligence must be inferred and the plaintiff cannot recover.

*Tolman v. Syracuse, &c., R. Co.,* 98 N. Y., 198; *Hale v. Smith,* 78 N. Y., 480; *Hart v. Hudson R. Bridge Co.,* 84 N. Y., 56; *Baker v. Fehr,* 97 Pa. St., 70; *Phila. & Reading R. Co. v. Boyer,* 97 Pa. St., 91; *Giles v. Diamond St. Iron Co.,* Del.

That the plaintiff is not entitled to recover unless the jury shall find upon the evidence in the case that the defendant was guilty of negligence, and that such negligence was the proximate cause of the injury complained of.

1 *Shearman & Redfield* (4 Ed.), Sec. 57 ; 1 *Addison on Torts,* Secs. 10, 11, 33, 34 ; *Wharton,* Secs. 3, 73, 97, 300, 332.

Negligence is not the proximate cause of injury unless the injury follows in ordinary, natural sequence from such negligence.

*Wharton,* Secs. 73, 97.

No promise on the part of an employer to remedy a defect in machine will relieve his employee from the exercise of reasonable and ordinary prudence and care under the circumstances.

*Wharton,* Sec. 220 ; *District of Columbia v. McEllegott,* 117 U. S., 621 ; *Counsell v. Hall,* 14 N. E., 530 ; *Indianapolis Ry. v. Watson,* 14 N. E., 721.

If the danger to the plaintiff from his continued use of the machine was so imminent and manifest as to prevent a reasonably prudent man of his age, capacity and experience from risking it upon any promise or assurance on the part of the defendant that the cause of danger would be removed, he cannot recover. Authorities supra.

No promise on the part of the defendant, if any was made, to repair any defect in the machine in question, will enable the plaintiff to recover, if the use by the plaintiff of his right hand at the time of the injury complained of was such as ordinary care and prudence would have forbidden, notwithstanding such promise. Authorities supra.

COMEGYS, C. J., charging the jury :

This is the first time a case involving the questions this case does, has been presented to a court and jury in this state. There may be nothing very unusual in the features of it to men who are accustomed to work in machinery in mills or to mill-owners; but such a one has not come within this court's cognizance before the present time. The action is for the recovery of damages to the plaintiff which he sustained, at the time he was in the defendant's employ in his wadding or shoddy mill, in this city, by reason of alleged negligence on the defendant's part to provide the plaintiff

12

with safe machinery to work with or upon. His case is that the injury he received, for which his claim of damages is made, was such as could not have occurred if the defendant had observed and performed his duty alluded to. The defense brought forward is that the injury to the plaintiff was not owing to any neglect of duty incumbent on him as the employer, or (in legal phrase) master, of his servant, the plaintiff, but arose out of the latter's own negligence entirely; but, if there was any neglect of duty on his (the defendant's) part, it was not owing to that that the accident happened, but to want of proper care on the part of the plaintiff in working with the machine. The plaintiff's case, therefore, is that he lost his hand in consequence of the breach of duty on the part of the defendant; and that of the latter is that there was in fact, in this case, no breach of duty by him; but, if there were, the injury would not have been received if the plaintiff had observed his duty,—that is, such caution or circumspection as persons acquainted with the danger of an employment are accustomed to take, or are held by law bound to take, with respect to it. A perfectly safe employment—as plowing, for example, with an ordinary team—requires but very little care on the part of the farm hand, but working with reaping-machines, threshing machines, corn-shellers, and the like, makes necessary much care to avoid receiving injury. Feeding an engine with fuel is quite a safe employment; but directing its operations when in motion, so that, while it performs the work it is intended for, and which a servant is employed to manage that no avoidable accident shall happen, requires, in order to make that service safe, that the servant or person employed shall have the necessary skill for that business, and use it with such prudent caution as shall be reasonably requisite to protect himself from personal injury, where such is likely to result from want of such caution.

On the 2d of June, 1886, the defendant was the owner and operator of the mill before referred to. The plaintiff was a young man, brought up to the business of farming, and knowing nothing of any other, except that he had such slight knowledge of black-

smithing as a few months' service as helper to a blacksmith could give him. He came to Wilmington about the 1st of June, and applied to the defendant for work in his mill, which was given him, with full knowledge, on the defendant's part, that he had no knowledge whatever of machinery. On the 2d of that month he set in to work; and, in view of his ignorance, the defendant assigned him an instructor in the person of the defendant's witness William M. Walraven, who showed him how to work the machine he was assigned to. According to the testimony of the plaintiff, Walraven remained with him the first day he took service, (the 2d of June,) the next, and part of that following; by that of Walraven, he was with him four or five days. When the latter left him, it was supposed, no doubt, by both, that the plaintiff could properly work the machine himself. Walraven says he showed the plaintiff every part of the machine, and explained to him its operation, what he was expected to do, and how to do it. Everything went on without accident until the 17th of the month, when the casualty occurred which made necessary the amputation of the plaintiff's right hand, which had been caught by that one of the revolving toothed cylinders which had been pointed out to you on the diagram, and was so lacerated as to require it to be cut off. As before said, this action was brought to recover compensation, by way of a verdict of damages, for the plaintiff's injury. Whether he has shown himself, by the testimony in the case, entitled to any damages, and, if so, what should be the amount thereof, within the limit of the claim, is for you to determine upon a careful, unbiased, review, and consideration of all the testimony on both sides, and due observance of the law applicable to the case as it shall be given you by the Court.

It is a fact, admitted of no dispute, that. relatively at least to other manual labor employments, working with machinery driven by engines using steam power is a dangerous one, as shown by the numerous accidents therefrom, the subject of suits in court, and also by actual observation. As no owner of machinery on anything

like a large scale—as that, for example, in a shoddy-mill—can run it himself, doing all the service necessary, therefore he must, of course, employ agents or servants to assist him in that business. He will have a general manager or overseer, a superintendent of the machinery, generally, etc. You have heard the several functions of these officers explained. They stand, generally, in place of the owner, who, as he must act through and by them within their respective spheres, is as much bound by their actions, within the scope of their authority, as if he acted himself. So, also, whatever is necessary to be done, under circumstances, and which such agents are called upon to do, if not done within a reasonable time, is as much his neglect or default as if the call to do it had been made upon him personally. Applying this to the case presented by the testimony of the plaintiff given by himself, there was a call or demand made by him, on the Saturday next before the accident occurred, with which compliance was promised. Before saying more with respect to that, it is proper that you should be informed of the law that governs master and servant during the continuance of the service of the latter, or, rather, the law that operates at the time of employment, and continues until that employment ceases. In the first place, where the employment is such as is shown in this case— that of working a shoddy machine in a mill,—there is a legal duty upon the master to provide his servant with a reasonably safe place to do his work in, and reasonably safe machinery to work with or upon. In other words, the master undertakes that if the servant shall be reasonably careful in his service, he shall suffer no damage or injury from a defective or unfit place to work in, or defective machinery to work with. There is also the corresponding duty on the part of the servant to obey the master's orders in the course of his employment, and so to conduct himself in it as to earn the wages agreed upon ; that is, do his duty by his master. He, also, generally, undertakes, in legal contemplation, that he has competent knowledge of the employment he enters upon. This latter, however, is not an element of the contract between master and servant

in a case where the latter has no knowledge ; but a different one exists, which is that, his ignorance considered, he will do the best he can. Again, some employments are in themselves dangerous, more or less ; and others have no appreciable danger attending them. I have spoken of them before. In the case of the former, or the dangerous ones, the rule is that, where there is no agreement to the contrary, the servant takes the risk upon himself of his employment; that is, he takes upon himself, and impliedly agrees not to hold the master responsible for, the usual risks of the employment he enters upon, which includes the common casualties of the business, such as by experience have been found to be attended upon the occupation without the actual fault of any one, and also the negligence of fellow-servants. But he takes upon himself no other risks of the service, primarily. If, however, there shall appear to him, from his own observation, or by being pointed out by others, any other risks which are not the common ones of the employment, but are the result of the breach of duty on the part of the master, of which I have spoken, (that is, to furnish a safe place to work in, and safe machinery to work with), he cannot remain in the service, and hold the master responsible for injury to himself resulting from such breach of duty, because the knowledge of the peril, and continuance in service afterwards, and notwithstanding such knowledge, is the same, in effect, as if he had known it at the time he took the employment, in which case the contract of service would be taken to include the risk, the same as if expressly mentioned between the parties. Why is this ? Because, in case of such necessary danger, he may withdraw himself any time from the employ- ment, and thus secure himself against any such risk. If, with a knowledge of it, he still remains in the service, he will have no right to call upon the master for compensation if injury befall him by reason thereof. This is the general rule. But this general rule is subject to modification by circumstances. For example, if, upon discovering or being informed by others of a danger arising, say, from defect in machinery he is working with, which defect his pre-

vious want of experience with machinery (which want his master was acquainted with at the time of the employment) did not enable him to understand, he apply to the master, or his recognized agent over his machinery, to have such defect remedied, who promise to make the defeat good, he may remain in the service, without losing his right of action against his master for injury resulting from that defect, if in the meantime he observes that reasonable care to protect himself against such injury which ordinarily prudent men take of their persons when employed in a dangerous service of like nature ; that is to say, if the defect increases the danger of the service, the circumspection or caution of the servant with reference to his safety of person must be increased inproportion to the increase of danger. If the defect be not remedied in a reasonable time, the servant, from the end of that time, is in the same situation precisely as if he had known of the defect in the first instance ; that is, he would be held to take the risk of it if he chose to continue in the service. And we further say that, whether an actual promise to repair the defect is made or not, yet, as the duty on the master, of which I have spoken, is to provide safe machinery for the servant to work with, notice of the fact that the machinery is defective, and therefore dangerous, is sufficient to require the performance of that duty ; and the servant would be justified in relying upon the belief that it would be done, to the same extent as if an express promise to do it were given. Otherwise what is said about the right of a servant to rely for his safety upon the common-law duty of a master to provide a worker in an employment with reasonably safe means of doing his work, either of place to work in, or tools or machinery to work with, would be unmeaning and misleading. But in this case there is testimony before you, on the part of the plaintiff, by his own oath, that he gave notice of the defect, from which it is claimed this accident happened, to Ainsworth, who is shown to have been the defendant's engineer, having a general superintendency of the machinery in the mill for repairs, as well as other things ; and that he promised him to have the machine repaired,

and the defect made good.    As this statement of the plaintiff is de-
nied by Ainsworth, you must decide which of them you will be-
lieve, taking into consideration that both parties are interested,—
the one to gain your verdict, and the other to screen himself from
liability over the defendant, if he made such promise ; and the ac-
cident, which caused the plaintiff the loss of his best hand, was in fact
the result of his default alone, and not of the actual want of due
care on the plaintiff's part.

A few more remarks, and I shall say no more with respect to
the law applicable to this case.   The difference between this case
and any other of which we have knowledge is this : that whereas,
in other cases, persons seeking employment, and who are given it,
are usually, in case of employment upon machines, such as have
had at least some previous experience with them, and are aware of
the contingencies of danger that attend their use, yet the plaintiff
here, as was known to the defendant by information given him by
the plaintiff, (for that is admitted by his counsel,) was totally ig-
norant upon the subject of the working of machinery.   The de-
fendant undertook to instruct him, by placing his agent, Walraven,
over him, to teach him all about the machine, how he should oper-
ate it, and the danger attending the service.   The plaintiff says
that, when the instruction ended, he thought himself able to prop-
erly work the machine.   Was he, in fact, so able ?   To decide this,
you must not go beyond the proof in the case, and you must weigh
his own assertions that he was, against any proved facts that may
incline you to the opinion that he was not ; for, though a young and
therefore inexperienced man, he is not to have the benefit of want
of proper instruction (if there is any proof at all of such, or cir-
cumstances, established by testimony, to show it) unless you are sat-
isfied, from the proof in the case, that the defendant
was not justified in believing that he had done his duty by him. If
he did all that most other men under like circumstances would have
done, that is enough.

You have heard a great deal about the guides of the main belt,

and their office or purpose, about which purpose there is no controversy. But there is a great deal about whether the stop-guide was in place or not while the defendant worked at the machine. The testimony is conflicting, and you must form your opinion upon that which you think is best entitled, all things considered, to your credence. If the handle of the apparatus, used to shift the main belt over from the tight to the loose pulley, was, at the time the plaintiff was rescued from the machinery, found to be turned as was proper to throw the belt off such tight pulley, and, as the defendant insists he has proved, the guide-bolts or pins were both in place, then the main belt could not have shifted over to the tight pulley to set the machine going again. The accident to the plaintiff must then have happened because he thrust his hand in to remove the clog in the cylinder teeth before the cylinder itself had ceased to revolve. On the contrary, if the stop-pin was not in place, and had not been since the plaintiff had gone to work at the mill, and he had pushed off the belt from the tight to the loose pully by the means he had always used, and others had used before him, for that purpose, and the revolving cylinder had stopped,—and the cylinder belt at rest was sufficient evidence of that fact, if you believe it was rest,—then the accident could have been caused in no other way than by the shifting of the main belt from the loose to the tight pulley for want of the right-hand or stop pin. If the plaintiff, in the first suggestion, attempted to free the cylinder teeth of the shoddy lumps before that part of the whole machine had stopped revolving, the accident was caused by his own want of proper care, and he cannot recover; but, if it happened from the cause he alleges, then there was no want of care on his part, but breach of duty on the part of the defendant to furnish him with safe machinery to work upon, and he is entitled to your verdict. It is proper that I should further say to you that if the experience the plaintiff appears by his testimony to have had with the shifting of the belt from the loose to the tight pulley (which as I remember, was that of, at most, three occasions only in two

weeks) was such as should have led him to expect danger from shifting at that time, then his act of attempting to free the cylinder without first throwing off the cylinder belt itself would be negligence or want of due care on his part, debarring him from right to recover. But it is also proper to say that there is no evidence before you that any one ever threw off the cylinder belt to stop the cylinder from revolving before they proceeded to free the teeth from tangled or matted shoddy material; but, so far as you have proof, the cylinder teeth were always unclogged by just such process as the plaintiff attempted to use on the occasion of the accident. But if you believe, from the testimony, that he was so careless, in doing so, as to bring on the trouble he might have avoided by using proper caution in so doing, then the fault was such want of caution, and not the default of the defendant.