# SUPERIOR COURT.

LEWIS C. ADAMS *vs*. FRANCIS T. CLYMER.

New Castle County, February Term, 1893.

**Master and Servant. Infancy.**—Where the employment is such as is usually followed by youths of sixteen years of age, the master has a right to presume that a servant of that age is possessed of the average intelligence and capacity; and, on the servant's statement that he had been employed at the same work in another factory, that he had a competent knowledge of the employment which he sought.

**Same.**—It is a question for the jury whether the servant should have known of the danger attending his employment, taking into consideration his age, the nature of the machine, the fact that he had operated it more than two months, and all the other facts attending his employment.

**Same.**—The duties of the master to his servant vary with the known age and experience of the latter.

**Master and Servant. Vice Principal.**—Within the scope of the agent's authority, the master is bound by his acts.

**Negligence.**—Contributory negligence may be imputed to a servant where he should have known the danger, and has failed to exercise ordinary care in the course of his employment.

This was an action on the case to recover damages for injuries sustained by the plaintiff while operating a pony-planer in the factory of the defendant. The facts are sufficiently stated in the charge of the court.

ROBINSON, C. J. (charging the jury).

The plaintiff was sixteen years and about two months old when,

in June 1886, he sought employment of the defendant. He first met and made application to Jacob T. Clymer, the brother of the defendant and superintendent of the mill. He was not then engaged, as Jacob T. Clymer wished time to consult his brother, the defendant, and requested him to call again in a few days. The plaintiff did call again, was hired by Jacob T. Clymer, who had in the meantime consulted the defendant, and was told to return on the following Monday, which he did, and according to his own statement was put to work at the pony-planer, planing sills. Running the pony-planer was not, however, the only work he was called upon to do at the mill, for he did general chores and operated at least one other of the machines. He was employed in the factory from June till the following September—except, that Jacob Clymer says he sent him home once but that he returned the same or the next day and was taken back at his own urgent solicitation.

On the fourth of September, 1886, his hand was caught in the pony-planer which he was at the time operating, and was so seriously injured that he lost three fingers. In fact his hand was rendered virtually useless and incapable of any manual employment.

The plaintiff says that when he sought employment of Jacob T. Clymer he told him that he had been working at Brier's, and that he had worked at general chores about the shop giving a lift at putting boards through the machine; that Mr. Clymer asked him if he could operate machinery about the shop and plaintiff told him he could not.

On the other hand Jacob T. Clymer says, that the plaintiff told him he had worked at Brier's saw mill; that he had had experience there; and that on that ground he, Clymer, took him and hired him.

The plaintiff further states that his method of operating the machine was, to use his own words, as follows:

"I passed around the machine—the wood would go through and drop down to the back of the machine—and I would pick it up by passing around the belt. I would let a lot of them drop

down and come around and pick them up and put them through again."

He states that he pursued that method with the machine for about two months and until about two or three weeks before he was injured, and until Jacob T. Clymer taught him another method, which again to use the plaintiff's own words—"Was to put my hand over the machine instead of going around, the board would go through and instead of going around the machine I would reach over the top of it and bring it back and put it through again."

Jacob T. Clymer denies that he ever so instructed the plaintiff; and he and other witnesses for the defence state that the plaintiff from the time he began work in June operated the machine by both methods.

The plaintiff also states that on the morning of the day on which he was hurt he had been told by Jacob T. Clymer to get the work out faster and that while he was so doing by running three or four sills through at a time, he reached over the machine, as one of the sills he was pushing through had got caught on the end, and with his right arm began to pull it away; and that while in that act his hand got caught in the knives and his fingers were cut off; and he says he could not keep his eyes here and there.

The testimony of the defence is that at the time of the accident there were in the room the defendant, Jacob T. Clymer, Thomas Hogue and the plaintiff. Thomas Hogue says there were two girls coming on the other side of Third street; that plaintiff said to him "Tom, how do you like them girls?" whereupon witness turned and looked, and the next moment heard the plaintiff call "Oh!" and looking saw that plaintiff's hand was fastened in the machine.

The defendant states that just before the accident he heard plaintiff say something about the girls to Hogue and looking saw the plaintiff standing with his hand over the shield, this way (and you saw how the witness illustrated.) The witness could not tell whether plaintiff's hand was in the slot or further over but that plaintiff was looking out Third street through the window; the

witness also looked out the window at the girls, then at the black board, and in an instant heard plaintiff holloa " Oh !"

Gentlemen, we have been compelled thus to recall to you some of the evidence in this cause, in order that we may lay down intelligently the law of the case as we understand it, but knowing that you will remember the whole testimony as given you by the witnesses and will decide accordingly.

It is evident from this testimony that the relation of master and servant, with all its mutual liabilities, obligations and responsibilities, existed between the plaintiff and defendant, and, Jacob T. Clymer being his superintendent, the defendant was liable for all acts and directions done and given within the scope of his employment.

In the first place, where the employment is such as is shown in this case, there is a legal duty upon the master to provide his servant with a reasonably safe place to do his work in, and reasonably safe machinery to work with or upon.

And as some employments are in themselves dangerous, more or less, and others have no appreciable danger attending them, where the employments are dangerous the rule is that, where there is no agreement to the contrary, the servant takes upon himself the risk of his employment; that is, he takes upon himself, and impliedly agrees not to hold the master responsible for, the usual risks of the employment he enters upon, which includes the common casualties of the business, such as by experience have been found to be attendant upon the occupation without the actual fault of any one.

In thus giving you the law of this and similar cases we have used almost the exact language adopted by Chief Justice Comegys in the case of *Foster vs. Pusey*, 8 Houst. 168, to which the counsel for both sides have referred.

Now the counsel for the plaintiff does not contend that the defendant did not furnish a reasonably safe room or reasonably safe machinery for adult employees. His contention is—that an employee of the youth and inexperience of the plaintiff ought not to

have been put to operate this pony-planer without receiving full instructions and information as to its dangerous character, and that as the plaintiff received no such instructions, he did not assume the usual risks of his employment—and he goes further and claims that no contributory negligence can be imputed to him. He further contends that the instructions which the plaintiff alleges were given to him by Jacob T. Clymer about two weeks before the accident, to reach over the machine for the sills instead of going around for them, were wrong instructions; that the risk of using the machine was greatly increased thereby; that these instructions were in fact the cause of the accident; and as they were given to the plaintiff by the superintendent of the defendant, the defendant is in consequence of the premises liable to the plaintiff in damages.

We say to you, gentlemen, that in our opinion the duties of the master toward his servant vary with the known age and experience of the servant. We believe that a jury would say that that master would be grossly in fault who would put a child of seven years to work at such a machine as this pony-planer is, and that in such a case it would be difficult indeed to impute any contributory negligence whatever to the child. And we also believe that there are machines so complicated in their structure and so bristling with dangerous points that they can only be safely operated by skillful adults of known experience, and that the employment of a youth of sixteen of average intelligence to operate such a machine would be held by any jury to be gross negligence on the part of the employer.

But there are many machines at which a youth of sixteen of average intelligence might with great propriety be put to work. Is this pony-planer one of them? It was run by gas power and the knives revolved at the rate of 3500 to 4500 revolutions a minute. Is there any secret about running the sills through, which a youth of sixteen of the intelligence of this plaintiff might not readily of himself learn? Is there any latent danger about it which any youth of sixteen of ordinary intelligence might not perceive— especially if he had run it for two months or two months and a half.

You see it before you in the model produced by the defendant. It is simple in its structure. You have, in addition to a view of the model, the conflicting evidence of the witnesses for the plaintiff and defence as to whether a youth of sixteen should be allowed to operate this pony-planer. You have the conflicting testimony of plaintiff and Jacob Clymer as to what was said about the experience of the plaintiff when he asked for employment. You have the conflicting testimony of the same witnesses as to the alleged advice given by Jacob Clymer to plaintiff to reach over the machine—the one asserting, the other denying that such advice was given. You have also the conflicting testimony of the witnesses for the plaintiff and defendant as to whether the method of operating the machine by reaching over was or was not a dangerous method of operating it.

It is for you to say, under all the evidence upon these points, whether the plaintiff was possessed of such intelligence that he ought to have known the dangerous character of the machine and the risks attendant upon its operation and whether the defendant should be liable in damages to the plaintiff, should you believe that the accident happened to the plaintiff as he states it happened, that is, while he was operating the machine by reaching over for the sills and without any known or ascertained negligence on his part, or, as Chief Justice Comegys put it in *Foster vs. Pusey*, without the actual fault of any one.

But the defendant claims that the plaintiff at the time the accident happened was guilty of the gross negligence of looking out the window and at the same time leaning with his hand and arm upon the machine while the knives were in rapid motion. It is for you to decide whether you will believe the witnesses who state this. If you so decide, then you should consider the age, capacity and experience of this youth, remembering that he must be presumed to have the average capacity and intelligence of other youths of his age. You must consider the two months, and over, experience he had had in operating the machine at the time the accident occurred —the obvious danger from knives revolving at such a rapid rate— and if you should say after considering these and all other facts

proved in the case that the plaintiff should have known the danger and should have exercised at least ordinary care and thoughtfulness when operating it—then you must determine whether you will impute contributory negligence to him, and if you do impute it to him, your verdict should be one of not guilty.

The counsel for the plaintiff has submitted certain prayers to the court for instructions to you, the third and fourth of which with answers thereto are as follows :

" 3. That it is incumbent upon the master not to expose the servant, when conducting the master's business, to perils or hazards against which he may be guarded by proper diligence upon the part of the master. The servant in entering upon the master's employment assumes the risks ordinarily incident to that employment, including the latent and unknown defects of machinery, and the negligence of fellow servants in the same employment; but he does not assume those risks arising from causes which from his incapacity or ignorance, he could not have forseen and which were within the knowledge of the master and by the exercise of ordinary prudence by the master could have been guarded against."

We cannot adopt this prayer in its entirety as a proper statement of the law. The capacity or ignorance of the servant must be known to the master, and when a servant applies for employment the master has a right to presume that he has a competent knowledge of that employment; for as Chief Justice Comegys says in *Foster vs. Pusey*, " He (the servant) also generally undertakes in legal contemplation that he has competent knowledge of the employment he enters upon," so in this case Mr. Jacob T. Clymer, when the plaintiff applied to him for employment, had a right to presume that he possessed the average capacity of youths of his age and a competent knowledge of the employment he asked for, if it was an employment usually followed by such youths. Again you must decide whether, even granting the defendant knew of the incapacity of the plaintiff,—the danger from the knives was not equally obvious to the plaintiff as to the defendant.

" 4. That if the jury believes from the proof in the case that

the plaintiff was a lad of immature judgment and not of sufficient mental capacity to properly judge of the extra risks of his employment, and that the defendant through his vice principal did not caution the plaintiff sufficiently in a proper method of operating the planer ; but on the contrary instructed him to operate it in a particularly hazardous manner, and the plaintiff relying upon the superior judgment of his vice principal followed the instructions and was thereby injured, the defendant's liability was thereby increased and the plaintiff is liable to recover as under the circumstances he cannot be charged with contributory negligence.

.We cannot so charge you gentlemen—for if you believe all that the counsel for the plaintiff supposes you to believe in this prayer, still if you also believe the witnesses for the defence and find that instead of attending to his work he was looking out the window at the girls and leaning upon the machine while the knives were in rapid revolution—you may further find that he was guilty of contributory negligence and not entitled to recover in this action.

*Verdict for Defendant.*

*Austin Harrington,* for plaintiff.

*Bradford & Vandegrift,* for defendant.