Case 64—PETITION ORDINARY—May 20.

## Breckenridge Company (Limited) v. Hicks.

APPEAL FROM BRECKENRIDGE CIRCUIT COURT.

FAILURE OF MASTER TO COMPLY WITH PROMISE TO REPAIR—RISK ASSUMED BY SERVANT.—Where the master is notified by the servant of a defect in the appliances or premises furnished for the servant's use, and promises to remedy the defect, the servant, by continuing in the

Breckenridge Company .(Limited) v. Hicks.

master's service for a reasonable time after the promise to repair, does not assume the risk, and if by reason of the defect he is injured within that time the master is liable. The servant assumes the risk only where, with knowledge of the defect, he continues in his work without any promise upon the part of the master to repair, or where, although the master has promised to repair, such a length of time has elapsed since the promise was made that the servant has no right to believe that the master intends to comply with his promise.

A miner called the attention of the "mining boss" to loose rock in the roof of the room where he was at work, and the "boss" promised to send in timbers for the purpose of propping the roof. The attention of the "boss" was called to the matter a second time, and he said he had forgotten it. Two days after the original promise by the "boss" to repair, the miner, concluding the props would not be sent in, resolved for that reason to quit work, and as he was leaving the mine a rock fell upon him, crippling him for life. *Held*—That the master is liable.

BULLITT & SHEILD FOR APPELLANT.

As appellee continued in the employment of appellant with knowledge of the danger, he can not recover. (Hughes v. C., N. O. & T. R. Co., 13 Ky. Law Rep., 72; Sullivan, etc., v. Louisville Bridge Co., 9 Bush, 89; Bogenschutz v. Smith, 84 Ky., 330; Needham v. L. & N. R. Co., 9 Ky. Law Rep., 65; Derby's Adm'r v. Ky. Central R. Co., 9 Ky. Law Rep., 92; Shearman Redfield on Negligence, secs. 92 and 93; Bigelow on Torts, 301; Griffin v. O. & M. Railway Co., 24 N. E. R., 888; Vincennes Water Co. v. White, 24 N. E. R., 747; Johnson v. Ashland Water Co., 45 N. W. R., 807; Nance's Adm'r v. N. N. & M. V. R. Co., 13 Ky. Law Rep., 556-7.)

FARLEIGH & STRAUS AND DAVID R. MURRAY FOR APPELLEE.

Where the master, when notified of a defect in the machinery or premises, promises to remedy it within a reasonable time, the servant, by remaining in the service for such reasonable time, does not waive his right to recover in the event he is injured by reason of the defect. (Bogenschutz v. Smith, 84 Ky., 330; McDowell v. Chesapeake, &c., R. Co., 8 S. W. Rep., 871; Beach on Cont. Neg., sec. 140.)

JUDGE PRYOR DELIVERED THE OPINION OF THE .COURT.

The appellee Hicks, in working the mines of the appellant, received a serious personal injury by the falling of a stone upon him from the roof. of the quarry or mine while in the employ of the company,

and has recovered four thousand dollars in damages
on the ground that the injury resulted from the neg.
ligence of the company's employes.

In order for the protection of miners, and to pre-
vent such injuries from falling stones, the roof above
the miner is supported by props that are furnished
by the company, and where the distance under the
mines from the entry is considerable, these props are
hauled in by cars that are used in bringing out the
coal.    Sometimes the miners themselves carry the
props on their shoulders to the places wanted, but
the evidence in this case conduces to show, and with-
out contradiction, that it is the duty of the company
to furnish them at the place designated or deemed
necessary for their use.    The appellee and his fellow-
laborers were experienced miners, and, apprehending
danger, or thinking there was a necessity for props
where they were at work, had laid out timbers, such
as they wanted to use for props, and marked them
so as those whose duty it was to bring them in would
have no difficulty in getting such props as they wished.

The *haulers*, as they are termed, were told several
times to bring them in, but failed.    The mining boss
had been in the room where this appellee was at
work two days before the accident, and his judg-
ment consulted as to the danger.    He was shown
some loose stone in the roof, over the road, and
wanted the workmen to brace it, and was told it
would cost no more to take it down; Hicks, ap-
pellee, remarking that they could not get timbers
to brace their room up, or roof above, much less the
roadway.    The boss then promised to send timbers

in. The very day of the accident, the employes or haulers were told to bring the timbers in by Hicks, and Dickerson, who was at work with Hicks, says they were told every day. This boss was told a day or two before the injury that the props ought to be sent in, and his reply was, "damn it, I forgot it."

Hicks and Dickerson were the only ones working in the room at the time of the injury, and finding that no props would be sent in, resolved to quit work, and in leaving, Hicks having gone into one corner of the room for oil to fill his lamp, in returning this rock fell upon him, crippling him for life. Dickerson says it was not the rock above their heads where they had been digging, and if the testimony of these witnesses is to be credited, it is evident that the personal injury resulted from the neglect of the defendant's employes.

We have given the testimony for the appellee bearing on the main question, all of which is, in effect, controverted by the testimony for the appellant, and the sole question in this case is, should the court have instructed the jury to find for the defendant? A peremptory instruction was based on the idea that this appellee, knowing the danger, voluntarily continued his work, in a place where he knew, or must be presumed to have known, that he was in danger of great bodily injury. The cases of Sullivan's Adm'r v. The Louisville Bridge Co., 9 Bush, 81, and Bogenschutz v. Smith, 84 Ky., 330, as well as other similar cases, are relied on as sustaining this doctrine. The doctrine contended for is well understood, and if the testimony for the appellee brings

this case within the rule, then the verdict below
should have been for the defendant.

In Sullivan's Adm'r v. The Bridge Co. there were
two planks placed side by side from a barge filled
with stone to a crib into which the stone was be-
ing placed.  The workman used the plank in car-
rying the stone for days, making no complaint, and
finally fell off the plank and was drowned.  He knew
the danger, saw what he had to stand on, made no
complaint, and after his death it was insisted that
proper protection to his person had not been afforded
by his · employer.  This court said he voluntarily
placed himself in the position from which he fell,
knew the danger, and by the exercise of proper care
might have avoided it.  The same question arose in
Bogenschutz v. Smith, 84 Ky., 330, and in Hughes v.
Railroad Co., 91 Ky., 526.  It will be assumed in
this case that both the employer and employe knew
of the danger, or from the facts had the right to
apprehend it.  Then the question arises, did Hicks
waive the danger, and voluntarily assume to work
without looking to the employer for these props?
If Hicks, knowing the danger, continued in his work
without complaint, or rather without requiring of his
superior to provide these props, then he can not re-
cover, and this is the rule recognized by the cases to
which our attention has been called by counsel for
the appellant.  Suppose, however, the · superior is
notified of the danger, and the necessity for these
props, and promises to furnish them in a reasonable
time, then the workman may continue his work, and ·
will not be adjudged to have waived the right of

exacting this duty of his superior by remaining this reasonable time in the service.

This is the doctrine of all the text-books with reference to machinery, and the appliances to be used by the laborer in the discharge of his duties. (Beach on Contributory Negligence, page 372.) This court said, in Bogenschutz v. Smith, 84 Ky., at page 340: "But generally if a servant knows that the machinery or material furnished him for work is defective and unsafe, *or that the premises where he labors are dangerous*, and he, without complaint or promise from the master of a change, continues to use them, he must be deemed to have waived any claim against the master for injury therefrom." The ordinary risks and danger in this kind of labor the appellee assumed when he undertook the work, and while this danger may be anticipated either with or without supporting the roof above, where the laborer continues to discharge his duties for a few days, believing, and having the right to believe, that the support required will be furnished him, there seems to us to be no valid reason for determining that such conduct is a waiver of the right of recovery, when, if the superior had complied with his promise, no injury would have been inflicted. The course pursued by the appellee was rational, and under the belief that all danger would be averted by a compliance by the boss with his promise, and when he saw that danger was actually impending was leaving to avoid it when the stone fell. The right of recovery exists if the testimony of the appellee and his co-workman is to prevail.

Judgment affirmed.