## MARTIN C. HUBER vs. JACKSON & SHARP COMPANY.

New Castle County, February Term, 1895.

**Master and Servant.**—It is a primary duty of the master which cannot be delegated to provide for the servant a reasonably safe place in which to work, and the care required of him in providing such reasonably safe place in which to locate and operate machinery is in all cases in proportion to the dangerous character of the machinery.

**Same.**—No employer by any implied contract undertakes that his buildings are safe beyond a contingency, or even that they are as safe as those of his neighbors, or that accidents shall not result to those in his service from risks which others would guard against more effectually than is done by him. Neither can a duty rest upon any one which can bind to so extensive a responsibility.

**Same. Negligence.**—The failure to exercise ordinary care that the buildings and machinery such as they are shall not cause injury, and that the business as conducted shall not inflict damages upon those who are guilty of no negligence is negligence.

**Same. Vice Principal.**—If the premises be in a dangerous condition and such dangerous condition is open and apparent to the servant, who with such knowledge continues to work therein, the master is not liable. If however, the servant notifies the master of the defect or danger and receives from him or a vice principal a promise that the defect shall be remedied, and is induced by reason of said promise to remain, and is injured within a reasonable time thereafter, without contributory negligence on his part, he is entitled to recover.

**Master and Servant.**—If a servant applies for and accepts a certain class of employment, representing himself as competent, the master has a right to presume that he has a competent knowledge of such employment, and in such case if the jury believe that the injury resulted from the want of skill or capacity on the part of the plaintiff they should find for the defendant without taking into consideration the dangerous character of the machinery used, except in so far as it was rendered more dangerous by reason of the unsafe place.

**Proximate Cause.**—The doctrine of remote and proximate cause does not apply in a case where the negligence of the plaintiff and the defendant, which

caused the injury was operating at the instant of the accident, and if the jury believe that the injury was caused in any degree by the negligence or carelessness of the plaintiff operating at the instant of the accident, they should find a verdict for the defendant.

**Burden of Proof.**—The burden of proof is upon the plaintiff to show by a preponderance of proof that the negligence of the defendant was the cause of the injury, and that he was free from contributing thereto.

**Evidence.**—In a suit for damages alleged to have been incurred while working in an unsafe place the condition of the place at the time of the accident is the test. All alterations made subsequently are not involved in the issue, and are therefore irrelevant.

**Same.**—In such an action testimony tending to show the condition of the uilding at the present time is also irrelevant and inadmissible.

This was an action on the case for damages caused by an accident to the plaintiff while in the employment of the defendant, by which he lost the fingers of his right hand, as he alleged, by reason of the negligence of the defendant. The material facts are stated in the charge of the Court.

At the trial, *Bird*, for the plaintiff, asked John Pauley, a witness for the plaintiff: From having seen men work, as you say, every day on the jointer side of that machine, state to the jury what effect the floor shaking had upon that machine and the men working upon it?

An objection was overruled.

LORE, C. J. The witness can state whatever he saw of the effects of it.

*Bird*, for the plaintiff asked Albert S. Deale, a witness for the plaintiff: Having seen them at work that day, state what effect as to safety or otherwise the shaking of the floor had on the men working at that machine?

An objection was overruled.

LORE, C. J., directed the witness to confine his answer to what he knows and has seen.

The witness replied : " Well, the effect was dangerous."

*Higgins*, for the defendant, moved to strike out the answer, which motion was denied.

Charles M. Russell, a witness for the plaintiff, was asked on his direct examination : What were Spence's duties in that relation as the regular millwright of the place, what did you see him doing when you were there ?

*Higgins*, for the defendant, objected that it was irregular.

*Bird*, for the plaintiff. We propose now to lay the ground for showing a promise on the part of Spence, or if not a promise, a complaint to him and what he said ; also, by this witness, that one of Spence's duties related particularly to the flooring of that mill and that he repaired it constantly.

*Higgins*, for the defendant. It is an attempt to prove by this witness, who was only in the cabinet shop, what is the division of duties or authority that goes to make up the position of a man in the mill who is alleged to have been, in the language of the law, a vice principal. There should be shown antecedently some ground for the knowledge of the witness.

LORE, C. J. The objection is overruled ; actual knowledge of the fact inquired about may be stated, with the right to the defendant to cross-examine as to the witness' means of knowledge.

*Bird*, (resuming) asked the same witness: Did you ever have a conversation with Mr. Bennett in relation to the condition of the second floor ?

*The Witness*: Yes, sir.

*Higgins* objected and contended that conversation with Mr. Spence could not bind the company, as he had not been shown to be a vice principal, but only did certain repairs around the mill. *Bird,* on the other hand, contended that he was the general millwright of the place, that his attention was called to it and he now desired to show what Mr. Bennett said after having his attention called to it.

LORE, C. J,: The witness was asked to state as a fact what is the position a certain man occupies, and he said he was the head millwright, whose duty it was to make repairs. Now occupying the position of head millwright, whose duty it was to see that the floor was kept in good order, complaints made to him about this floor, we think are admissible. The defendant can show there was no such authority, if he can. Certainly complaints to that man, if the man occupied that position, about the floor, we think are admissible.

*Bird,* (continuing). When was that conversation (with John Bennett) to the best of your knowledge?

The question was objected to by *Bates,* for the defendant, on the ground that it had not been shown that Mr. Bennett was a vice principal and that conversations with him were irrelevant.

LORE, C. J.: There are several ways of proving authority. One is the actual exercise of that authority continuously and recognized by the person. Another is by proof of letter of attorney or something of that kind. But there has been in this case proof that this party exercised that authority or agency.

Albert M. King, a witness for the defendant, being under direct examination was asked by *Bates,* for the defendant: Has there been any change in the condition of the shafting?

The question was objected to as irrelevant.

*Bates,* in support of the relevancy of the question, stated among other things that it was in answer to plaintiff's testimony on the point.

LORE, C. J. In a suit for damages alleged to have been incurred in an unsafe place the condition of the place at the time of the accident was the test, and all alterations made subsequently are not involved in the issue and are therefore irrelevant. Respecting the alleged irrelevant testimony on the point which had been adduced by the plaintiff, if objection had been made the testimony would not have been admitted. The difficulty in the mind of the Court is whether proof can subsequently be adduced in relation to irrelevant matter which had gone in without objection.

*Bates,* for the defendant, then put this question : In the condition in which those posts were at the time of the accident, as you have described, would it have been possible under the conditions existing on that floor, for the floor to rise up above the posts after the floor had been fixed as you described ?

The question was objected to by counsel for plaintiff and the objection was sustained.

*Bates,* for the defendant, asked John Bennett, a witness for the defendant, on direct examination : Have the floor and its supports remained since that time in the same condition as they were at the time of Huber's accident.

Counsel for plaintiff objected to the question as irrelevant, also to the admission of any expert testimony which may be based upon it, as to the present condition of the building or machinery as showing what their condition was at the time of the accident.

Counsel for defendant insisted upon the propriety of the question, and of the proof sought to be adduced, after a lengthy discussion, the following decision sustaining the objection, also dissenting opinion of the Chief Justice, were delivered.

CULLEN, J. (announcing the opinion of the majority of the Court:) The question that has been presented for the consideration of the Court is a very important, and I believe a new one, in one sense of the word; but the majority of the Court think it is not taken out of the general principles of law that govern cases of this character.

The issue in this case is as to whether or not the place was a reasonably safe place on the twenty-fifth of February, 1893. Under the decisions relative to which the law is not denied, the question is whether the same principle does not apply to the case where an injury may happen from a machine and afterwards an improvement be put upon the machine. That cannot be given in evidence against the party, as proving that it was not reasonably safe before; in other words, because they had not the best improved machinery, provided that which they had is reasonably safe, they are not guilty of negligence.

The question presented here for the Court in relation to this matter is what is the condition of the building now with respect to the condition on the twenty-fifth of February, 1893.

We don't think that testimony is in issue, because the issue as to the condition of the building now in no wise affects the matter.

If it was a machine, though the machine was worn out by use, yet there is a principle by which that machine is operated which does not change at all. But here, after the lapse of two years, is a building that has necessarily been subject to changes by reason of wear and tear, and it could not necessarily of itself be the same building that it was at that time.

But, independent of that, the issue is as to what was the condition of the building at that time. You present as connected with that matter another issue, and that is as to whether this building is now in the condition it was at that time. What has that to do with the issue in this case? As to whether the condition is better or whether it is worse has nothing to do with this case, because you must confine yourselves in all cases to the issue involved in the particular case.

Therefore we think this is not relevant testimony.

MARVEL, J., concurred.

LORE, C. J. (dissenting).   I agree with the majority of the court that the issue is one arising from the condition of the building at that time.   There is no doubt about that.

It does not occur to me, however, that this proof changes the issue, but is only the proof of that condition.

I understand that proof is offered for the purpose of showing that the building is in the same condition now that it was then, and an examination now coupled with examinations then will show that the building was safe or unsafe, whatever it may be.

If that building was safe or unsafe on that day and it is in the precise condition to-day that it was then and has so continued it seems to me that it is proof of the condition of the building on that day.

Is there any difference between the admission of the machine and the admission of this proof?   If that machine is in the same condition to-day that it was two years ago is it not admissible. Now if they attempt to show its condition to-day without relation to its condition of two years ago, as showing that the condition was precisely the same then, it would be unquestionably excluded.

*Bird* (interrupting).   That would be upon a hypothetical case.

LORE, C. J. (continuing).   No, if they wish to introduce this evidence without showing that the condition of the building remained the same, it would be irrelevant; but when they show that the condition of the building to-day is precisely the same as the condition of the building two years ago, then it proves the condition two years ago.   You cannot escape the conclusion ; it is inevitable.

Then, if it is in the same condition to-day, may not witnesses go and examine it and come and state its condition, being precisely the

condition it was two years ago, as well as they could have done it two years ago?

If they cannot show the condition of the building and let witnesses see that building, how can you permit them to see the machine. Why cannot you still permit witnesses to go and examine that building, being the same building it was two years ago.

I think when you connect the condition of this building to-day with its condition two years ago and show that it is the same, you prove, therefore, the condition of the building on that day, and testimony showing its condition to-day being precisely the same is admissible, the same as though it were testimony showing the condition of that machine.

I think it should be admitted—but go on with your case, it is excluded by a majority of the Court.

Subsequently during the trial testimony similar to that here excluded was introduced and admitted without serious objection or discussion although the ruling was not formally overruled.

*Bird, Gray* and *Sanborn*, for the plaintiff, asked that the jury be instructed, among other things, as follows:

The degree of care which the law imposes on the master in the performance of the duty of providing a reasonably safe place in which to locate and operate machinery increases with and is in proportion to the dangerous character of the machinery; *Wheatley vs. P., W. and B. R. R. Co., supra* 305; *Giles vs. Diamond State Iron Co.,* 7 Houst. 556; 8 Atl. 370; *Foster vs. Pusey,* 8 Houst. 168; *Stewart vs. P., W. and B. R. R.,* 8 Houst. 450; *Harkins vs. Pullman Palace Car Co.,* 55 Fed. Rep. 933; *Peace's Admr. vs. Johnson Forge Co.,* 1 Term Rep. 52; 9 Houst. 338; *Benzing vs. Steinway,* 5 N. E. Rep. (N. Y.) 451; *Pantzer vs. Tilly Foster Mining Co.,* 2 N. E. Rep. (N. Y.) 24; *R. R. Co. vs. Baugh,* 149 U. S. 368, 386.

Where the servant notifies the master that the place where he is set to work is defective and dangerous and receives from him a promise that the defects shall be remedied he may recover for in-

juries caused thereby, without contributory negligence on his part, within such period of time after the promise as would be reasonable for its performance, or within any period that would not preclude all reasonable expectation that the promise might be kept; *Foster vs. Pusey,* 8 Houst. 168; Bailey. Master's Liability, 207, 208; Cooley, Torts, 559; 1 Shear. & Redf. Negl. § 215; *Wagon Co. vs. Kehl,* 29 N. E. Rep. 714; *Lytle vs. Chicago R. R. Co.,* 47 N. W. Rep. 571; *Bothenberger vs. Milling Co.* 59 N. W. Rep. 531; *Schlitz vs. Pabst Brewing Co.* 59 N. W. Rep. 188; *Breckinridge Co. vs. Hicks,* 22 S. W. Rep. 554; *New Jersey R. R. Co. vs. Young,* 59 Fed. Rep. 723; *Hough vs. R. R. Co.,* 100 U. S. 213.

If the jury shall believe from the evidence that William J. Hume or John Bennett were the general foreman and assistant foreman of the car shop of defendant, where plaintiff worked and was working at the time of the accident complained of, and had charge, order and direction of plaintiff respecting his said work in said shop, and of the room wherein he was working at the time of the said accident, notice to them, or either of them, of the unsafe condition of the floor was notice to the defendant, and defendant was responsible for any assurance by them, or either of them, that the same would be remedied.     *Foster vs. Pusey,* 8 Houst. 168.

*Bates* and *Higgins* submitted the defendant's prayers for instructions as follows:

1. That upon the evidence the jury must find a verdict for the defendant.

Or, if the first instruction be refused, then as follows:

2. If the jury believe from the evidence that the injury to his hand was in any degree caused by the negligent or careless conduct of the plaintiff, their verdict should be for the defendant. *Stewart vs. P. W. & B. R. R. Co.,* 8 Houst. 450.

3. The plaintiff, in entering the service of defendant, assumed the dangers and hazards which are ordinarily and naturally icident to the service which he undertook.     *Ibid.*

4. The plaintiff must exercise reasonable care to avoid injury

to himself, and to learn the dangers that are likely to beset him in the service, and he must improve every opportunity to do this by the exercise of due diligence in examining his surroundings.

5. When a person enters upon a dangerous employment, he not only assumes the risk ordinarily incident thereto, but also the risk he may incur from manifest perils. *Stewart vs. P. W. & B. R. R. Co.*, 8 Houst. 452.

6. Where a servant applies for employment, the master has a right to presume that he has a competent knowledge of that employment. He also undertakes in legal contemplation that he has competent knowledge of such employment. *Adams vs. Clymer, supra*, 79.

7. No matter what the obligation on the part of an employer is, nor how much he may neglect to perform it, if a party is in his service, being aware of a threatened danger to him while engaged in such service, takes no efficient steps where such are within his power to take, in time for his protection, he must abide by the result of his own neglect, or rather temerity. *Stewart vs. P. W. & B. R. R. Co.*, 8 Houst. 457.

8. No employer by any implied contract undertakes that his buildings are safe beyond a contingency, or even that they are as safe as those of his neighbors or that accidents shall not result to those in his service from risks which others would guard against more effectually than is done by him. Neither can a duty rest upon anyone which can bind to so extensive a responsibility. Negligence does not consist in not putting one's buildings or machinery in the safest possible condition, or in not conducting one's business in the safest way. *Giles vs. Diamond State Iron Co.*, 7 Houst. 556.

9. That by his contract of hiring with the defendant as a machine hand the plaintiff agreed that he was competent and skilled enough to do such work and physically capable of it, and if the jury believe from the evidence that the accident was in whole or part caused by the want on the part of the plaintiff of skill or capacity to do such work their verdict must be for the defendant; *Foster vs. Pusey*, 8 Houst. 168.

10. That the defendant was required by law to provide only a reasonably safe place where the plaintiff was working when he was injured, and if the jury believe from the evidence that the place where the machine stood on which the plaintiff was hurt was in a reasonably safe condition for the working of such machine their verdict must be for the defendant; *Stewart vs. P., W. and B. R. R. Co.*, 8 Houst. 456 ; *Giles vs. Diamond State Iron Co.*, 7 Housr. 556.

11. That if the floor where the machine stood upon which the plaintiff was hurt was unsafe by reason of any vibration, jar or jerk in said floor caused by the faulty construction of the building, the machinery or shafting therein, and if the jury should believe from the evidence that such vibration, jar or jerk in the floor and machine was patent, open and apparent, so that the plaintiff was aware thereof when he was hurt in working on said machine, their verdict must be for the defendant, unless the jury should believe that the plaintiff had made complaint thereof to Mr. Hume and had been promised a change in such condition.

12. It is the duty of the employee to use his senses to avoid danger from machinery about which he may be employed, and his failure to do so will defeat any action to recover for injuries received therefrom, even though the master may have been negligent in its construction or operation, provided the defect or danger be one apparent to the senses. *Harkins vs. Pullman Co.*, 55 Fed. Rep. 933.

13. Such defects or dangers as are perceptible to the senses,— such as at once manifest themselves to the servant by their actual presence, are patent dangers, and the master is not liable for any injury that happens to the servant. *Williams vs. Walton & Whann Co.*, 9 Houst. 331. .

14. The burden of proof is upon the plaintiff to establish the fact that the defendant was guilty of negligence, causing the injury to the plaintiff, and also that the plaintiff was himself free from negligence contributing to his injury. Unless both of these propo-

sitions are established by a preponderance of evidence, the verdict must be for the defendant.' *Ibid.*

15. The law does not presume negligence. If an action is brought by the servant against the master for injury, the presumption is in favor of the master's having performed his duty. *Williams vs. Walton & Whann, etc., Co.,* 9 Houst.' 331.

16. The employee is not bound to obey the orders of his superior directing him to go to a place of danger or engage in a dangerous service, but he is justified, and it is his duty to refuse to engage in such service, and if he, having the opportunity to observe the danger, nevertheless obeys the order and exposes himself to the danger and suffer injury therefrom, the master cannot be held liable therefor. *Harkins vs. Pullman Co.,* 55 Fed. Rep. 933.

17. That this case does not involve the question of danger in the machine upon which the accident occurred, as the master is not bound by any duty to use a more or less dangerous machine and no defect is alleged in this one. Bailey on Master's Liability, etc., 14.

LORE, C. J. (charging the jury.)

This is an action brought by Martin C. Huber, the plaintiff, against the Jackson & Sharp Company, the defendant, to recover damages for the loss of the fingers of his right hand, which he alleges resulted from the negligence of the defendant.

Huber, the plaintiff, began working for the company on the 14th of March, 1887. He operated the sticker side of what is called the universal machine, a two-sided machine having what is called a sticker and also a jointer side. The machine was located on the first or ground floor of the building. In June, 1887, the fingers of his left hand were cut off by this machine. He resumed work in September, 1887, and worked upon this and occasionally on other machines until the accident of February 25, 1893, which last accident is the subject matter of this suit. In November, 1892, the sash factory was removed from the second story of the building, the floor jacked, leveled and blocked up, the shafting straightened and this room turned into a shop for wood work of

the car building department. This universal and other machines were placed in this second story for use in such car work. Huber worked upon this machine in the second story from November, 1892, to February 25, 1893.

It is claimed by the plaintiff that he entered into the employment of the defendant company to work on the sticker side of the universal machine. That he was unacquainted with the jointer side. That on February 25, 1893, he was ordered by Mr. Bennett, the assistant foreman of that room, to work some ramps on the jointer side of the machine, Bennett having assured him upon his inquiry that he could do the work. That while he was so working carefully a sudden thump or jar cause by starting a saw on the floor below, added to the vibration of the floor, resulting from its unsafe and dangerous condition, made the ramp jump from his hand, hurled it back of him some sixteen feet and forced his right hand into the knives, resulting in the injury now complained of. That the defendant was notified of and knew the dangerous condition of the floor and had promised to remedy it.

The defendant, on the other hand, claims that there was no negligence on its part. That the plaintiff engaged himself to them as a machine hand to run machines. That he worked on this machine and others without objection. That he was negligent at times and careless in using the machine, even after his attention had been directed to his negligence. That the floor was in good order and safe, and had no unusual vibration or jar which added materially to the risk or danger of operating the machine. That the vibration or jars and thumps, whatever they were, were patent and as well known to the plaintiff as the defendant. That they knew of no defect in the floor; that their attention was never called to any such defect, and that they made no promises whatever to correct any defect.

Damages are claimed only for the last accident, that of February 25, 1893. You are not to take into consideration the accident of June, 1887, as it came into the case indirectly in the course of the plaintiff's connection with the defendant company.

The plaintiff rests his right to recover upon the allegation, that at the time of the injury February 25, 1893, the floor on which plaintiff worked vibrated and was subject to such sudden jars or thumps that it was dangerous for an unskilled man to operate such a machine as the jointer side of the universal.

The leading question of fact therefore is, whether that floor on which the universal stood was or was not on that day a reasonably safe place for Huber to operate such a machine.

The law governing this case presents no new questions. Every point raised has been passed upon by the courts of this State. All that we need do, therefore, is to state to you what has been so decided upon the several points covered by the prayers of counsel on both sides.

The employment of Huber by the Jackson & Sharp Company as proved in this case, established between them the relation of master and servant, and imposed upon each the duties and clothed each with the rights growing out of that relation.

It is a primary duty of the master to provide for the servant a reasonably safe place in which to work, and the care required of him in providing such reasonably safe place in which to locate and operate machinery is in all cases in proportion to the dangerous character of the machinery. The master may not delegate this duty to any other person, so as to relieve himself of responsibility for the non-performance thereof.

The Court of Errors and Appeals in the *Diamond State Iron Company vs. Giles*, 7 Houst. 556, has stated this duty in the following language: " No employer by any implied contract undertakes that his buildings are safe beyond a contingency, or even that they are as safe as those of his neighbors, or that accidents shall not result to those in his service from risks which others would guard against more effectually than is done by him. Neither can a duty rest upon any one which can bind to so extensive a responsibility.

" Negligence does not consist in not putting one's building or machinery in the safest possible condition, or in not conducting

Charge.

one's business in the safest way; but there is negligence in not exercising ordinary care that the buildings and machinery such as they are shall not cause injury, and that the business as conducted shall not inflict damage upon those who are guilty of neglect of prudence."

If, therefore, you should believe from the evidence that such a reasonably safe place was not provided by the defendant in this case, your verdict should be for the plaintiff, in the absence of negligence on his part.

If, from the evidence, you believe that the floor was in a dangerous condition from vibration, jars or jerks, caused by defective construction of the building, shafting or machinery, or any of them, and that such dangerous condition was open and apparent to Huber so that he saw and knew of it, before the injury, in time to avoid it, or might so have seen or known of it, by the reasonable use of his senses, and with such knowledge he continued to work therein, your verdict should be for the defendant, and that too, notwithstanding the negligence of the company in respect thereto inasmuch as in the case Huber choose to remain and take the risks, although he saw and knew the danger.

If you believe, however, that Huber notified the company of the defect and danger and received from it, through William J. Hume, the general foreman, or John Bennett, the assistant foreman of that department, a promise that the defect should be remedied, and that he was induced to remain by reason of that promise, and was injured within a reasonable time thereafter, without contributory negligence on his part, he would be entitled to recover. For even if he knew the danger, he had the right to remain a reasonable time in the place of danger, relying upon such promise, if it were made, and not lose his right to recover. You must be satisfied, however, that such a promise to remedy the defect was made.

In determining this case you are not to consider the dangerous character of this machine, other than as it was rendered more dangerous by the unsafe place, nor are you to consider whether it was

more dangerous than some other machine upon which Huber might have worked. The plaintiff does not claim to recover damages by reason of the absolute danger of this machine itself, or of its danger relative to some other machine, but only because of the increased danger growing out of the unsafe place.

If you believe from the evidence that Huber applied for and accepted employment as a machine man to run machinery, then the defendant company had the right to presume that he had a competent knowlege of such employment. By such application he held himself out as possessing such competent knowledge, and that he was possessed of skill enough to do such work and physically capable of it. And if you believe that the injury resulted from the want of such skill or capacity, your verdict should be for the defendant.

Operating machines like the universal is conceded to be dangerous employment, and Huber in undertaking such work assumed the dangers and risks ordinarily incident thereto, as well as those that might occur from manifest peril.

It was his duty to exercise reasonable care to avoid danger to himself and also to understand the perils that environed him.

We cannot instruct you "that upon the evidence the jury must find a verdict for the defendant," as asked in the prayers of the defendant.

We do say to you that if you believe from the evidence that the injury was caused in any degree by the negligence or careless conduct of Huber your verdict should be for the defendant, as we do not think that the doctrine of remote and proximate cause applies to this case, as the negligence, if any there was, whether of the plaintiff or defendant, or both, was operating at the instant of the accident.

To entitle the plaintiff to recover he must establish the negligence of the defendant. The burden is upon him to show by a preponderance of proof to your satisfaction that the negligence of the defendant was the cause of the injury, and that he was free

from contributing thereto. The law does not presume negligence; it must be proved.

We have endeavored to present the law upon the questions raised by counsel as clearly as possible, so that you may easily comprehend its bearing upon the case. This case, however, is mainly one of fact, to be determined by you upon the evidence, and turns upon the narrow issue of whether the place in which Huber worked on the 25th day of February, 1893, was a reasonably safe place. You have heard the evidence and have listened to it with marked patience and intelligence, and now there remains to you the duty to weigh it carefully and conscientiously, and to render your verdict thereon in accordance with what you believe to be just under the law as above stated.

If your verdict should be for the plaintiff he is entitled to recover such a sum of money as will compensate him for the injuries shown by the evidence to have been received by him.

Should you find for the defendant your verdict should simply be for the defendant.

*Verdict for the plaintiff for $5,000.*

The defendant, by its counsel, then moved the Court that the verdict should be set aside and a *venire de novo* be awarded, the reasons on which the application was based being filed as follows:

And, now, to wit, this 23d day of March, A. D. 1895, the defendant, by Anthony Higgins and George H. Bates, its attorneys, comes and files the following reasons why a new trial should be granted, to wit:

(1) That the verdict was against the evidence.

(2) That the verdict was against the weight of the evidence.

(3) That the verdict was against the law applicable to the case.

(4) That the Court did at the trial misdirect the jury on matters of law material to the issue.

(5) That the charge of the Court was calculated to produce in

the mind of the jury a misapprehension of the nature of the issues of fact involved in the case.

(6) That the charge of the Court was calculated to confuse the mind of the jury and to mislead them, as to the issue of fact involved in the case in the words following, viz. :

" If, therefore, you should believe from the evidence that such a reasonably safe place was not provided by the defendant in this case, your verdict should be for the plaintiff in the absence of negligence on his part."

And also in the words following, viz. :

" We have endeavored to present the law upon the questions raised by counsel, as clearly as possible, so that you may easily comprehend its bearing upon the case. This case, however, is mainly one of fact, to be determined by you upon the evidence, and turns upon the narrow issue of whether the place in which Huber worked on the 25th day of February, 1893, was a reasonably safe place."

(7) That the charge of the Court was calculated to confuse the mind of the jury and to mislead it as to the issue of fact involved in the case, in the following language, viz. :

" If you believe, however, that Huber notified the company of the defect and danger, and received from it, through William J. Hume, the general foreman, or John Bennett, the assistant foreman of that department, a promise that the defect should be remedied and that he was induced to remain by reason of that promise and was injured within a reasonable time thereafter without contributory negligence on his part he would be entitled to recover."

*Higgins* and *Bates*, for the defendant.

The verdict should be set aside because of misdirection of the Court, as claimed in the fourth, fifth and sixth reasons why a new trial should be given. These reasons are as follows :

(4) That the Court did at the trial misdirect the jury on matters of law material to the issue.

(5) That the charge of the Court was calculated to produce in

the mind of the jury a misapprehension of the nature of the issues of fact involved in the case.

(6) That the charge of the Court was calculated to confuse the mind of the jury and to mislead them as to the issue of fact involved in the case in the words following, viz. :

" If therefore you should believe from the evidence that such a reasonably safe place was not provided by the defendant in this case your verdict should be for the plaintiff in the absence of negligence on his part."

And also in the words following, viz. :

" We have endeavored to present the law upon the questions raised by counsel as clearly as possible, so that you may easily comprehend its bearing on the case. This case, however, is mainly one of fact, to be determined oy you upon the evidence, and turns upon the narrow issue of whether the place in which Huber worked on the 25th day of February, 1893, was a reasonably safe place."

" The Court say : " The plaintiff rests his right to recover upon the allegation that at the time of the injury, February 25th, 1893, the floor on which the plaintiff worked vibrated and was subject to such sudden jars or thumps that it was dangerous for an unskilled man to operate such a machine as the jointer side of the universal. The leading question of fact therefore is whether that floor on which the universal stood was or was not on that day a reasonably safe place for Huber to operate such a machine."

Again the Court say : " If therefore you should believe from the evidence that such a reasonably safe place was not provided by the defendant in this case your verdict should be for the plaintiff in the absence of negligence on his part."

These various statements in the charge left out of account the main defence of the defendant, material to the issue, that even if from the facts the jury should believe that the place was not safe and was dangerous, yet that the accident was not caused by the alleged unsafety or danger.

The defence thus excluded by the Court in their statement

that the case turned upon the narrow issue as to whether the place where Huber worked was a reasonably safe place is that the accident was not caused in any degree by the shake or other alleged motion in the floor or from the movement of the saw in the floor below. That there was such a contention is indicated in the charge itself, where, in stating the character of the defence, the Court say, " That he was negligent at times and careless in using the machine, even after his attention had been directed to his negligence. That the floor was in good order and safe, and had no unusual vibration or jar which added materially to the risk or jar of operating the machine." This contention of the defendant is supported by the testimony of several witnesses, two of whom had worked upon the machine in question.

A " defect " is not a " defect " in the legal sense of this connection except as it leads to danger.

And *notice* of a defect which procludes the idea of danger, because the complaint was merely that it prevented the plaintiff from " doing good work " was not notice of a defect because of *apprehended* danger.

Therefore there was no notice given to the defendant of the alleged danger, nor was he put upon inquiry of any alleged danger or the consequent duty imposed upon him to remedy it.

On the contrary, if there actually was the danger complained of by Huber, the company, by the form of his notice, was left in a fancied and delusive security, for which Huber, rather than the company, was to blame.

The master has the primary right to make the place where the servant works safe; that is, free from danger within the proper limits of that rule. But, the servant, knowing such danger, by remaining in the service, contributes to any injury he may sustain. From this liability, as being contributing negligence, he will free himself by getting assurances that the danger shall be removed. The whole principle, therefore, of this rule, turns upon danger, and a defect is, in fact and law, a defect " simply because it leads to danger." Such is the language of Judge Cooley in his work on

Torts 559, and his words are quoted as the foundation of their. ruling by the Supreme Court in *Hough vs. Railway Co.*, 100 U. S. 225. See also *Holmes vs. Clarke*, 6 H & N., 349, 358 ; *Clarke vs. Holmes*, 7 H. & N. 937.

This distinction between risks and defects is well stated in *Cook vs. St. Paul, Minneapolis, etc., Ry. Co.*, 34 Minn. 45 ; *Russell vs. Minneapolis & St. Louis Ry. Co.*, 32 id. 230.

This Court has discussed this subject very fully in language which establishes the conclusion that the knowledge which the servant must bring to the master is knowledge of the danger and not merely knowledge of the defect. *Foster vs. Pusey*, 8 Houst. 181.

The existence of any want of safety in the premises is no ground of liability on the part of the master if known to the servant and he continues to work without objection, unless he warns. the master and promise is made to repair. Here the alleged defect was admitted to be open, apparent and notorious and known to the plaintiff, but he seeks to avoid the consequence of his knowledge by alleging notice to one standing in the relation of vice principal. The claim of warning rests solely upon his own testimony, according to which he said : " It is hard to make good work the way this. floor is shaking. Ain't you soon going to fix this floor ? " And the reply was, as he states : " Yes, we are getting ready to fix it now." This was on February 17, 1893, and on the 23d he mentioned it again. The second complaint was : " I said it was very hard to make good work here the way the floor shakes ; ain't you going to fix it ? " He said : " Yes, they are getting ready ready to fix it now."

This conversation is denied by the other party to it ; but assuming it to be true, it was clearly a complaint or warning of a. defect not with respect to the danger of the workmen, but solely with respect to its effect on the work. It was a warning not that the machine was dangerous to work upon, but by reason of the condition of the floor the machine would not do good work. Not only was there no suggestion of danger, but the language excluded the idea of danger. It could in no sense be said to be a warning.

of defective premises in the sense that it should have put the master on his guard against a possible danger to the workmen. It was a warning which imposed no duty, as there would have been by a general allegation of defect, to inquire into the matter himself, but only a duty to ascertain whether the work was affected by any circumstance that required repairs, not for the protection of the servant, but for the benefit of the master. Knowing, as in this case the testimony shows the defendant must have known that the work was in all respects satisfactory, there was nothing in the complaint, as the plaintiff claims to have made it for the master to investigate. The so-called warning was misleading, and ought to operate as an equitable or moral estoppel against any claim resting upon it as a legal basis.

The Minnesota cases cited above held that he might have given notice of the defect alone if he did not know the danger, but here he claims that he did know it.

*Gray* and *Bird*, for the plaintiff.

The defendant must be confined to the reasons for a new trial filed by him now before the court.

The defendant in his argument makes the following points:

1. That there was no evidence of a legal notice by the plaintiff to the defendant of the danger resulting from the unsafe condition of the floor.

2. The Court did not, in its charge to the jury notice the contention of the defendant's counsel that the accident might possibly have happened without negligence on the part of the defendant, to wit, from a chip getting under the ramp and preventing its being held down firmly upon the table by the plaintiff.

3. That three specified portions of the charge were misleading and intended to confuse the mind of the jury.

I. As to the first point, it is to be observed that we are not discussing the weight of this testimony or the proper conclusions to be drawn from it. That is a matter for the jury. The ques-

tion is whether any testimony proper for the consideration of the jury was adduced as to this point.

The testimony of the plaintiff as to notice is found on pages 29 and 30 of the Record. By it it appears that he called the attention of Mr. Hume, the foreman, to the condition of the floor, first on the 17th of February, 1893, where he said, speaking of this condition, and saying : " It is hard to make good work the way this floor is shaking. Ain't you soon going to fix this floor? " to which Hume answered, " Yes, we are getting ready to fix it now." Six days thereafter, to wit, on February 23, 1893, he says that he called the attention of it to Mr. Hume as he was passing and said : " This floor is beginning to shake worse. Ain't you soon going to get it fixed?" He said : " Yes, we are fixing it now. They are working on a post." In reply to a question by plaintiff's counsel he further says on page 31 that he (Huber) thought it was dangerous, and that he would have quit work if it had not been promised that it would be remedied.

Each of these conversations is a distinct and sufficient notice to the defendant of the defect from which the danger arose, and they are independent of each other.

The defendant must be presumed to know the conditions which affected the safety of the place on which the plaintiff was required to work. All the requirements of the law on this subject are met by a notice of the defect in which the danger was inherent. No text writer and no reported case can be adduced in which the distinction between notice of the defect and notice of the danger arising from the defect is made as applying to the knowledge of the master. It is true that courts have made a distinction between a knowledge of the defect and a knowledge of the risk as applied to the case of a servant who is sought to be affected with an assumption of the risk of a certain employment; *Wuotilla vs. Lumber Co.*, 33 N. W. 553.

See also the cases cited by defendant's counsel in 20 N. W. Rep. 147 and 24 N. W. Rep. 311.

Both text books and the reports in treating of the doctrine of

notice by servant to master, which is sufficient to put the risk for a reasonable interval upon the master, all speak of notice of defect and notice of danger indiscriminately and as synonymous; *Foster vs. Pusey*, 8 Houst. 182; Bailey on Master and Servant 206, 207, 208; Beach on Cont. Neg. 372; Shearman & Redfield Neg. 372, § 215; 2 Thomp. Neg. 994.

In the Foster case it appears that the notice given was only of the defect and not specifically of danger.

II. As to the second point, namely: That no notice was taken by the Court in its charge of the contention of counsel before the jury that the accident may have happened by reason of a chip getting under the ramp, and thus without negligence on the part of the defendant.

To this we reply that it apparently never occurred to the counsel for the defendant to make this contention or request from the Court any instruction to the jury upon this specific point, as an inspection of the seventeen prayers for instruction submitted by them will make plain; but notwithstanding this omission on the part of counsel to point out to the Court this, among many possible conjectures, of what might have caused the accident other than the negligence of the defendant, the Court sufficiently covered these grounds of defense by saying, as it did on page 9 of the charge: " To entitle the plaintiff to recover he must establish the negligence of the defendant. The burden is upon him to show by a preponderance of proof to your satisfaction that the negligence of the defendant was the cause of the injury, and that he was free from contributing thereto. The law does not presume negligence; it must be proved."

The plaintiff asserted the negligence of the defendant. The Court said he must prove it. One way of many to rebut the charge of negligence would be to show that the accident happened from some cause other than the negligence of the defendant.

III. As to those portions of the charge which are pointed out in the reasons filed, and which are said to have been calculated to mislead the jury, we submit that every charge must be taken as a

whole, and that it will not do to take detached and dislocated clauses of the charge and dwell upon them as if they constituted the whole charge.

As is well said by a text writer, " A charge to the jury should be construed as a whole. Thus, where a portion of it is complained of which standing alone would bear a construction that might mislead the Jury, the objection will not be sustained ; when considered with the rest of the charge, the jury would not be likely to put such construction upon it, or be misled by it."

*Baltimore, etc., R. R. Co. vs. Mackey*, 157 U. S. 72 ; *Evanston vs. Gunn*, 99 *id*. 667 ; Hill. on New Trials 266, Section 23 ; Tweed's Case, 16 Wall. 515 ; *Reeves vs. Del. L. & W. R. R. Co.* 30 Pa. 460.

All the law that is applicable to a case of this kind cannot be stated by the Court *uno flatu*. The propositions must be stated distinctly and separately, and in the charge in this case, a reading of it will disclose that the larger part of it is taken up with a statement of the propositions of law, which constitute the legal ground of the defense. Neither can the Court, where the primary propositions are in the exigencies of the given case, subject to qualification and re-qualification, carry along in every distinct sentence the qualifying phrases. It is sufficient, if in the whole charge there appears no omission of a proposition of law necessary to the case, on one side or the other, and no mis-statement of any proposition of law.

PER CURIAM. The motion for a new trial is denied.